Mr. Raymond Simon, Director Arkansas Department of Education 4 State Capitol Mall Little Rock, Arkansas 72201-1071
Dear Mr. Simon:
I am writing in response to your request for an opinion on three questions concerning newly adopted Act 1599 of 2001. That Act is entitled "An Act To Set Forth Certain Ethical Guidelines and Prohibitions for Educational Administrators, Employees, And Board Members; To Set Penalties for Violations; To Repeal Certain Arkansas Code Provisions; and For Other Purposes." Specifically, you pose the following questions in this regard:
 1. Do Sections 6(e) and 7(e) of Act 1599 of 2001 exempt "employment contracts" by a public educational entity for an administrator or employee position from the Act's disclosure requirements even if the person seeking employment with the public educational entity is a family member of a board member or administrator of the public educational entity? According to Section 5(b) of Act 1599, the Act does not prohibit a family member of a board member from being employed by a public educational entity if it is in the best interest of the entity. The "best interest" standard is a general fiduciary standard imposed on virtually all board decisions. Does this standard also require the disclosure process be followed in Section 5(c) or does Section 5 (c) only apply to those contracts not exempted in Section 6(e) and 7(e) of Act 1599 of 2001?
 2. Does Act 1599 of 2001 (specifically Sections 4(a), 8, 12 and 19) provide the Department authority to promulgate rules and regulations establishing ethical standards and guidelines dealing with an educational entities [sic] expenditures for educational or work-related travel, conventions, seminars lodging and other expenses for board members, administrators and employees of the public educational entity? Apparently Section 12(d) of the Act grants such authority to promulgate rules and regulations governing such expenditures by vendors.
 3. (a) Does Section 5(c)(1)(C) of Act 1599 of 2001 require a board member directly or indirectly interested in a proposed contract to absent himself from the discussion and the vote on the contract issue or merely absent himself from the vote?
 (b) Pursuant to Section 5(c)(1)(C), when a board member is required to ". . . leave the meeting until the voting on the issue is concluded . . ." is the board member actually required to physically absent himself from the location of the public meeting?
 (c) Does Act 1599 of 2001 also require administrators and employees directly or indirectly interested in a proposed contract to leave the meeting during the vote process on the contract issue?
RESPONSE
In my opinion the process outlined in Section 5(c) does not apply in the circumstances you describe. Sections 5(b) and 6(b) state that the act does not prohibit the employment of family members in most instances. The answer to your second question is "no," in my opinion. Act 1599 does not grant such authority, although a school district's authority in this regard is not unlimited. In my opinion the answer to the first part of your third question is unclear, but in my opinion the board member must absent himself from the discussion and the vote on the matter. The answer to the second part of your third question is not entirely clear, but in my opinion the plain language of the Act appears to require the board member to step outside the door of the room in which the meeting is being held. The answer to the third part of your third question is in my opinion "no."
Question 1 — Do Sections 6(e) and 7(e) of Act 1599 of 2001 exempt"employment contracts" by a public educational entity for anadministrator or employee position from the Act's disclosure requirementseven if the person seeking employment with the public educational entityis a family member of a board member or administrator of the publiceducational entity? According to Section 5(b) of Act 1599, the Act doesnot prohibit a family member of a board member from being employed by apublic educational entity if it is in the best interest of the entity. The"best interest" standard is a general fiduciary standard imposed onvirtually all board decisions. Does this standard also require thedisclosure process be followed in Section 5(c) or does Section 5 (c) onlyapply to those contracts not exempted in Section 6(e) and 7(e) of Act 1599of 2001?
Section 5 of Act 1599 of 2001 governs the ethical conduct of school board members. It provides in pertinent part as follows:
 SECTION 5. School boards. (a) General Prohibition. Except as otherwise provided, it is a breach of the ethical standards of this act for a board member to contract with the public educational entity the member serves if the board member has knowledge that he or she is directly or indirectly interested in the contract.
 (b) The act does not prohibit family members of board members from being employed by the public educational entity the board member serves if the board determines that the employment is in the best interest of the public educational entity.
 (c) Exceptions. (1) Board Approval. (A) In unusual and limited circumstances, a public educational entity's board may approve a contract between the public educational entity and the board member or the member's family if the board determines that the contract is in the best interest of the public educational entity.
 (B) The approval by the public educational entity's board shall be documented by written resolution after fully disclosing the reasons justifying the contract in an open meeting. The resolution shall state the unusual circumstances necessitating the contract, and shall document the restrictions and limitations of the contract.
 (C) Any board member directly or indirectly interested in the proposed contract shall leave the meeting until the voting on the issue is concluded, and the absent member shall not be counted as having voted.
 (2) Independent Approval. (A) If it appears the total transactions with the board member or a family member for a fiscal year total, or will total, five thousand dollars ($5,000) or more, the superintendent or other chief administrator of the public educational entity shall forward the resolution along with all relevant data to the Director of the Department of Education for independent review and approval. The resolution and other relevant data shall be furnished by certified mail with return receipt requested or other method approved by the State Board of Education to assure adequate notice of receipt by the Department of Education and to provide a record for the school sending the approval request.
 (B) Upon review of the submitted data, the Director of the Department of Education shall, within ten (10) days of receipt of the resolution and other relevant data, approve or disapprove in writing the board's request. The director may request additional information or testimony before ruling on a request. If additional data is needed for a proper determination, the director shall approve or disapprove the contract within ten (10) days of receipt of the additional requested data. If the director does not respond to the public educational entity within the ten-day period, or request additional time or data for a proper review of the contract, the contract shall be deemed to be approved by the director.
 (C) If approved, the Director of the Department of Education shall issue an approval letter stating all relevant facts and circumstances considered and any restrictions or limitations pertaining to the approval. The Director of the Department of Education may grant the approval for a particular transaction or a series of related transactions. However, no approval shall be granted for a period greater than two (2) years.
 (D) No contract subject to the director's review and approval shall be valid or enforceable until an approval letter has been issued by the Director of the Department of Education or the director fails to respond to the public educational entity within the time periods specified in this section. [Emphasis original.]
In my opinion the language of Section 5(b) excepts the employment of family members from the requirements of Section 5(c). Section 5(c) sets out the process to use when an exception is to be made to the general prohibition of Section 5(a). The impact of Section 5 (b) is that the employment of family members is not within the prohibition of Section 5(a) in the first place. There is no need, therefore, to employ the "exception" in Section 5(c) to those circumstances. In addition, if the procedures of Section 5(c) were applied to the employment of family members, that construction of the Act would render Section 5(b) surplusage. That is, Section 5(b) would be redundant or unnecessary, as both it and Section 5(c) require at least a determination by the school board that the contract would be in the best interest of the public educational entity. It is an established rule of statutory construction that language in a statute will not be given a construction that renders is mere surplusage. On the contrary, an attempt is made to give meaning to all portions of an act. See e.g., Stephens v. Arkansas School for theBlind, 341 Ark. 939, 20 S.W.3d 397 (2000); Central SouthernCompanies, Inc. v. Weiss, 339 Ark. 76, 3 S.W.3d 294 (1999); and Ford v.Keith, 338 Ark. 487, 996 S.W.2d 20 (1999).
In my opinion Sections 6(e) and 7(e) are not as pertinent to the question as Section 5(b), quoted above, and Section 6(b), which provides that: "This act does not prohibit an administrator's family members from being employed by the public educational entity the administrator serves or any other public educational entity."[1] Your first question concerns the employment of family members of board members or administrators. Sections 6(e) and 7(e) exempt employment contracts issued to administrators oremployees,[2] and do not specifically mention family members of school board members and administrators. That situation is governed more expressly by Sections 5(b) and 6(b), respectively, and these sections do not prohibit the employment. In my opinion, as stated previously, the procedural requirements of Section 5(c) do not apply to such employment contracts.
Question 2 — Does Act 1599 of 2001 (specifically Sections 4(a), 8, 12 and19) provide the Department authority to promulgate rules and regulationsestablishing ethical standards and guidelines dealing with an educationalentities [sic] expenditures for educational or work-related travel,conventions, seminars lodging and other expenses for board members,administrators and employees of the public educational entity? ApparentlySection 12(d) of the Act grants such authority to promulgate rules andregulations governing such expenditures by vendors.
In my opinion, Act 1599 does not grant such authority. The particular Sections you reference provide as follows:
 Section 4. General Prohibition. (a) No board member, administrator or employee shall knowingly use or attempt to use his or her official position to secure unwarranted privileges or exemptions for himself or others.
 Section 8. Reimbursement of expenses. Nothing in this act prevents board members, administrators, or employees from being reimbursed by the appropriate public educational entity for necessary and documented travel or other job related expenses.
 Section 12. Gratuities and kickbacks. (a) It is a breach of the ethical standards for any person to offer, give, or agree to give any board member, administrator, or employee, a gratuity or an offer of employment in connection with any contract or transaction of a public educational entity.
 (b) It is a breach of the ethical standards for any board member, administrator, or employee to solicit, demand, accept, or agree to accept from another person or entity a gratuity or an offer of employment in connection with any contract or transaction of a public educational entity.
 (c) It is a breach of the ethical standards for any payment, gratuity, or offer of employment to be made by or on behalf of a person or entity as an inducement for the award of a contract or transaction with a public educational entity.
 (d) The State Board of Education shall issue specific rules and regulations regarding educational or work-related travel, conventions, seminars, and other benefits provided by vendors.
 Section 19. Rules and regulations. In order to administer the provisions of this act, the State Board of Education shall adopt rules and regulations consistent with the provisions and intent of this act.
In my opinion none of the provisions above can be cited as giving the Department or the State Board the authority to promulgate regulations governing an educational entity's expenditures for educational or work-related travel, conventions, seminars, lodging or other expenses of board members, administrators or employees. Act 1599, in my opinion, simply does not address such expenditures. This is evidenced by Section 8, above, stating that "[n]othing in this act prevents . . . reimburse[ment] . . . for necessary and documented travel or other job related expenses." In addition, Section 12 of the act, which governs "gratuities and kickbacks," only grants the State Board the authority to promulgate rules concerning the provision of such benefits by vendors, not by the educational entity itself. Neither, in my opinion is the general language of Section 4(a) or Section 19 sufficient to invest the State Board with this authority.
This is not to say, however, that a particular school district's authority over such matters is unlimited. The Arkansas Constitution restricts the expenditure of school revenues to school purposes. See
Arkansas Constitution, art. 14, § 3 and Amendment 74. My predecessor had an opportunity to discuss the legality of school district expenditures for various purposes in Op. Att'y Gen. 91-411. He concluded, among other things, that use of school district revenues to pay for such items as the travel expenses of the spouses of school board members to professional meetings would transgress the constitutional provisions cited above. Obviously, some reimbursement for work-related expenses or school board members and administrators will be both legal and appropriate. As my predecessor noted in a later opinion on a similar question, however, "[a]t some point . . . expenditures may begin to fall toward the other end of the spectrum as impermissibly inuring to the benefit of private individuals." Op. Att'y Gen. 94-317 at 3. Such expenditures may be challenged in an illegal exaction lawsuit by any taxpayer. See Arkansas Constitution, art. 16, § 13. I cannot state, however, that Act 1599, standing alone, gives the State Board of Education or the Department the affirmative authority to promulgate rules and regulations over such expenditures.
Question 3(a) — Does Section 5(c)(1)(C) of Act 1599 of 2001 require aboard member directly or indirectly interested in a proposed contract toabsent himself from the discussion and the vote on the contract issue ormerely absent himself from the vote?
This portion of the Act governs the procedure to be followed when a school district board of directors is considering making an exception to the general prohibition against school board members contracting with the district. Section 5(c)(1)(C), which is set out at length in response to Question 1, provides that a board member "directly or indirectly interested in the proposed contract shall leave the meeting until thevoting on the issue is concluded, and the absent member shall not be counted as having voted." [Emphasis added.] This portion of the statute is very clear on the ending point of the board member's required absence (when the voting is concluded), but is unclear on when that absence is to begin. The construction of this language may depend upon what is included within the meaning of the phrase" the voting."
Unfortunately, I have found no helpful precedent construing the term "voting" in this context.
Construction of the subsection may also be aided, however, by reading the statute as a whole. See e.g., Flowers v. Norman Oaks Const. Co.,341 Ark. 474, 17 S.W.3d 472 (2000) (particular provision in a statute must be construed with reference to the statute as a whole). Section 5(c)(1)(B), which immediately precedes the subsection at issue, states that: "[t]he approval by the public educational entity's board shall be documented by written resolution after fully disclosing the reasons justifying thecontract in an open meeting. The resolution shall state the unusual circumstances necessitating the contract, and shall document the restrictions and limitations of the contract." (Emphasis added). Section 5(c)(1)(C) then states that the interested board member shall "leave the meeting until the voting on the issue is concluded. . . ." In my opinion it is reasonable to read the word "meeting" in Section 5(c)(1)(C) as referring back to the "meeting" discussed in Section 5(c)(1)(B), and the process by which the reasons justifying the contract are disclosed. In my opinion, therefore, Section 5 requires the interested board member's absence during the discussion and disclosure that takes place under Section 5(c)(1)(B) and until the "voting" is concluded.
Question 3(b) — Pursuant to Section 5(c)(1)(C), when a board member isrequired to ". . . leave the meeting until the voting on the issue isconcluded . . ." is the board member actually required to physicallyabsent himself from the location of the public meeting?
The Act is at least somewhat unclear on this point. The first rule of statutory construction, however, is to interpret a statute just as it reads, giving words their ordinary usually accepted meaning in common usage. See e.g., McDonald v. Pettus, 337 Ark. 265, 988 S.W.2d 9 (1999); and Brimer v. Arkansas Contractors Licensing Bd., 312 Ark. 401, 405,849 S.W.2d 948 (1993). The meaning of the term "meeting," is "[a] coming together of persons; an assembly. Particularly in law, an assembling of a number of persons for the purpose of discussing and acting upon some matter or matters in which they have a common interest. . . ." Black'sLaw Dictionary, (5th ed. 1979) at 886. I must conclude, therefore, that the Act, in requiring the interested board member to "leave the meeting," mandates that the member leave the assemblage of persons gathered for purposes of conducting and attending the meeting. At the very least, therefore, in my opinion the interested board member must step outside the door of the room in which the meeting is being conducted.
Although this seems an odd result, given that most meetings of school district boards of directors are required by law to be open to the public (see A.C.A. § 25-19-106 (a part of the Arkansas Freedom of Information Act)), in my opinion, requiring the absence of the interested board member from the meeting is within the General Assembly's power unless this action is unconstitutional in some way. I cannot state that it is.
Question 3(c) — Does Act 1599 of 2001 also require administrators andemployees directly or indirectly interested in a proposed contract toleave the meeting during the vote process on the contract issue?
There is no requirement in the Act to this effect. The only mention of "leaving the meeting" is in reference to board members who are himself interested in contracts (Section 5(c)(1)(C)), and to board members who are interested in a proposed contract with a school district employee.See Section 7(b)(1)(C).
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] There is an exception, however, beginning July 1, 2002. After that date, a member of an administrator's immediate family may not be initially employed as a disbursing officer with that same educational entity without written approval of the Director of the Department of Education.
[2] Section 6(e) provides that: "For purposes of this section, the term contract does not apply to employment contracts issued to an administrator of a public educational entity for administrative or other duties such as, but not limited to, teaching, bus driving, or sponsorship of clubs or activities." Section 7 (e) provides that: "For the purposes of this section, the term contract does not apply to employment contracts issued to public educational entity employees or other transactions for the performance of teaching or other related duties, such as, but not limited to, bus driving, sponsorship of clubs or activities, or working at school sponsored events."