James L. FLOWERS *v.*
NORMAN OAKS CONSTRUCTION COMPANY

99-1520                                    17 S.W.3d 472

Supreme Court of Arkansas
Opinion delivered June 1, 2000

*Baxter, Jensen, Payne, Young & Smith*, by: *Terence C. Jensen*, for appellant.

*Roberts Law Firm, P.A.*, by: *Mike Roberts* and *J. Mark White*, for appellee.

Robert L. Brown, Justice. The appellant, James Flowers, is a house framer and carpenter. While framing a house and attempting to extend scaffolding at the site, he lost his balance and fell more than twenty feet. He landed on his back which caused a fracture to his spine. The Administrative Law Judge found that there was sufficient evidence to show the presence of alcohol and to raise the rebuttable presumption that the injury was substantially occasioned by the presence of alcohol. The ALJ further found that Flowers had failed to rebut this presumption due to failure of proof and lack of credibility. The Workers' Compensation Commission, with one commissioner dissenting, adopted the findings of the ALJ and concluded that he was correct in denying benefits. Flowers appealed, and the court of appeals reversed the Commission in a plurality decision. *Flowers v. Norman Oaks Construction Co., Inc.*, 68 Ark. App. 239, 6 S.W.3d 118 (1999). Four judges of the court of appeals agreed to reverse the Commission on the basis that the presence of alcohol was not established by the mere smell of alcohol on Flowers's breath. One judge agreed with reversal but wrote that the only means to establish the fact that alcohol is present is by a blood-alcohol test. Four judges dissented on the basis that the smell of alcohol on Flowers's breath was documented by medical personnel and that Flowers had admitted to drinking between six and eight beers on the evening prior to the injury. We affirm the Commission and reverse the court of appeals.

The facts in this case are largely undisputed. After Flowers fell from the scaffolding at approximately nine o'clock in the morning on December 6, 1997, he was taken by ambulance to Baptist Medical Center in Little Rock where he underwent a spinal fusion. The report of the emergency medical technician who accompanied Flowers to the hospital stated: "Strong smell of ETOH on pt. He states he drank last pm but denies ETOH this day." Flowers's Emergency Room Record completed by a registered nurse at the hospital that same morning stated "Smell of ETOH about breath." No blood-alcohol tests were administered to determine the presence of ETOH, which is an acronym for alcohol, in Flowers's blood.

According to Flowers's testimony before the ALJ, he was in the process of putting together a walk-board when he pulled back a two-by-twelve board, and it slipped off the scaffolding pole, causing him to lose his balance and fall more than twenty feet. He testified

that the night before the injury, he drank six or eight beers with his friends over a five-hour period and went to bed at 11:30 p.m. He said that he stopped drinking by 11:00 or 11:30 p.m. He was at work by seven o'clock the next morning, and the accident occurred around nine o'clock a.m. He said he drank coffee the morning of the accident but no alcohol. Flowers admitted that he drank several beers three or four nights a week.

On cross-examination, Flowers testified that he had said in an earlier deposition that he had been drinking alone rather than with friends but stated he was not alone "all the time." He further admitted that he had been cited for DWI three times over the past five years. He offered that the paramedic reported a strong smell of alcohol, because he was wearing the same clothes from the night before and had not brushed his teeth or taken a shower. He stated that the only time he drank beer on a jobsite was after working hours.

Two other witnesses testified about Flowers and beer consumption. After the accident, Steven Coleman, a building contractor, investigated the jobsite where Flowers was injured for signs of alcoholic beverages and found six to ten beer cans. Charles Smith, a framing subcontractor who was building a house next to the jobsite where Flowers was injured, saw Flowers at work with Busch beer cans in his coat in late November or early December 1997. He did not actually see Flowers drinking beer on the job. A medical record entered after Flowers was readmitted to the hospital on December 14, 1997, stated that Flowers admitted to drinking a twelve-pack or a six-pack of beer every day.

▆ After the court of appeals reversed the Commission's denial of benefits, Norman Oaks Construction petitioned this court for review of the decision pursuant to Rule 2-4 of the Rules of the Arkansas Supreme Court. This court granted the petition. When this court grants review in a case such as we have before us, we review the Commission's opinion as if the appeal had been originally brought to this court. *Meister v. Safety Kleen*, 339 Ark. 91, 3 S.W.3d 320 (1999).

Flowers, in his appeal from the Commission's opinion, raises three issues. He contends that the Commission erred in finding that he did not sustain a compensable injury and that he was

intoxicated at the time of the accident. The trial court further erred, according to Flowers, in its application of Ark. Code Ann. § 11-9-102(4)(B)(iv)(a-c) (Supp. 1999).[1] We begin by quoting the pertinent subsections of the Code:

(B) "Compensable injury" does not include:

....

(iv)(a) Injury where the accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders.

(b) The presence of alcohol, illegal drugs, or prescription drugs used in contravention of a physician's orders shall create a rebuttable presumption that the injury or accident was substantially occasioned by the use of alcohol, illegal drugs, or prescription drugs used in contravention of physician's orders.

(c) Every employee is deemed by his performance of services to have impliedly consented to reasonable and responsible testing by properly trained medical or law enforcement personnel for the presence of any of the aforementioned substances in the employee's body.

Flowers argues that the clear intention of the presumption in § 11-9-102, when read as a whole, requires blood or urine testing by trained medical or law enforcement personnel to create a presumption. Moreover, he emphasizes that subsection (4)(b)(iv)(c) describes the appropriate testing for "the presence of the aforementioned substances in the employee's body." The use of the term "in the employee's body" in subsection (c), according to Flowers, further suggests that to raise the applicable presumption, the substance must be present in the employee's blood stream and not merely on his breath. Finally, he asserts that the statement of one person that the smell of alcohol existed on another person is too subjective and cannot substitute for valid medical testing.

Flowers goes on to explain the reasons he might have smelled of alcohol. He admits that he had been drinking the night before, but adds that he had worn the same clothes to work as he had worn

---

[1] In Volume 7 of the Arkansas Code, 1996 Replacement, the citation for this subsection was Ark. Code. Ann. § 11-9-102(5)(A)(iv)(a-c) (Repl. 1996). The subsections were renumbered due to subsequent legislation.

the previous night and had not brushed his teeth on the day of the accident. He also offers that the medical personnel could have been mistaken as to what they smelled, especially since alcohol in its pure form has no smell. There was no testimony by his employer or co-workers, he emphasizes, that he had slurred speech or was unsteady on his feet. Similar testimony, he notes, is often given by police officers to prove intoxication following a DWI charge.

We are persuaded that the Commission's finding of the presence of alcohol is supported by substantial evidence. Flowers admitted that he drank six to eight beers at his home with some friends the night before the accident. He stated that he went to bed by 11:00 or 11:30 p.m. the evening before the accident and left for work on the morning of the accident at about 6:30 a.m. Upon arrival at the accident scene, EMT paramedics noted "a strong smell of ETOH" about Flowers at 8:45 a.m. The registered nurse at the hospital reported that Flowers had a "smell of ETOH about breath." When Flowers was readmitted to the hospital a week later complaining of hallucinations, his medical records state that he admitted that he habitually drank a twelve-pack or six-pack of beer a day.

There was also circumstantial evidence that Flowers drank beer at the jobsite. Charles Smith testified that he had seen Flowers at work on a different day than the day of the accident display Busch beer cans hidden in his coat. (Flowers admitted that Busch is his preferred brand of beer.) Smith testified that the same day he saw Flowers with beer in his coat, he saw Flowers fall and injure himself. Steven Coleman testified that he found between six and twelve empty Busch beer cans on the jobsite a few days after the accident. Coleman also testified that no other work crew was at that site between the time of the accident and the day he found the beer cans.

■ In reviewing an appeal from the Commission, this court views the evidence in the light most favorable to the Commission's decision and affirms when that decision is supported by substantial evidence. *Meister v. Safety Kleen, supra.* Such evidence exists if reasonable minds could reach the same conclusion. This court will not reverse the Commission's decision unless fair-minded persons could not have reached the same conclusion when considering the

same facts. *See Ester v. National Home Ctrs., Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998).

■■ The Workers' Compensation Law must be strictly and literally construed by the Commission and the courts. *See Stephens Truck Lines v. Millican*, 58 Ark. App. 275, 950 S.W.2d 472 (1997). A particular provision in a statute must be construed with reference to the statute as a whole. *See Boyd v. State*, 313 Ark. 171, 853 S.W.2d 263 (1993).

■■ This court has defined a statutory presumption as "a rule of law by which the finding of a basic fact gives rise to the existence of a presumed fact, unless sufficient evidence to the contrary is presented to rebut that presumption." *ERC Contr. Yard & Sales v. Robertson*, 335 Ark. 63, 69, 977 S.W.2d 212, 215 (1998). This court in *ERC Contr.* pointed out that the statutory presumption does not "quantify the term 'presence.' Therefore alcohol is present whenever any amount of alcohol is revealed, no matter how small." *Id.* We further stated in *ERC Contr.* that even though the employee's blood-alcohol test revealed a low alcohol level, the test revealed the presence of alcohol and triggered the statutory presumption. *See id.*

In several recent cases, both this court and the court of appeals have held that the presence of drugs or alcohol established only by metabolites or a slight amount of the drugs or alcohol was sufficient to raise the rebuttable presumption and shift the burden of proof to the claimant to rebut the presumption. *See Ester v. National Home Ctrs., Inc., supra; Express Human Resources III v. Terry*, 61 Ark. App. 258, 968 S.W.2d 630 (1998); *Brown v. Alabama Elec. Co.*, 60 Ark. App. 138, 959 S.W.2d 753 (1998), *petition for review denied*, 334 Ark. 35, 970 S.W.2d 807 (1998); *Weaver v. Whitaker Furniture Co.*, 55 Ark. App. 400, 935 S.W.2d 584 (1996). However, in each of these cases some type of medical test was administered to the employee. In *Ester*, the employee tested positive in a drug-screen test for opiates and cocaine metabolites. In *Express Human Resources, Brown*, and *Weaver*, urine specimens were tested revealing the presence of metabolites of the drug in question.

This court and the court of appeals have further upheld a finding of "presence" where the admitted use of drugs occurred several hours or even days before the accident and injury. *See Ester v.*

*National Home Ctrs., Inc., supra,* (employee admitted using cocaine three days before accident); *Express Human Resources III v. Terry, supra,* (employee admitted using marijuana four days prior to the accident); *Continental Express v. Harris,* 61 Ark. App. 198, 965 S.W.2d 811 (1998) (employee ingested alcohol twelve hours before accident).

█ Our research shows that Arkansas appears to be the only state that raises a presumption that an accident was substantially caused by drugs or alcohol by merely establishing the presence of drugs or alcohol without requiring that that presence be confirmed by medical testing. Some statutes in other states require an employee's *intoxication* for the injury to be noncompensable. *See, e.g.,* Ala. Code § 25-5-51 (1992 Repl.); Conn. Gen. State. § 31-284 (1999); Del. Code Ann. tit. 19, § 2353 (1995 Repl.); S.D. Codified Laws § 62-4-37 (1993 Rev.); Vt. Stat. Ann. tit. 21, § 649 (1987). Other statutes require blood-alcohol testing. *See, e.g.,* Tenn. Code Ann. § 50-6-110 (1999 Repl.); Va. Code Ann. § 65.2-306 (1995 Repl.). On this point, the court of appeals has stated that § 11-9-102 does not require:

> that the Commission promulgate drug-testing procedures or spec-
> ify particular types of tests to be used as a precondition to the
> intoxication presumption. The Arkansas General Assembly could
> have required testing that would show a certain level of illegal
> drugs, as it has required to invoke the presumption in DWI cases,
> but it has not made such a requirement.

*Brown v. Alabama Elec. Co.,* 60 Ark. App. at 144, 959 S.W.2d at 756. We agree with that assessment. The end result is that our standard for noncompensability due to drug or alcohol consumption is broad and far-reaching.

█ Observations of police officers, which include as one ele-
ment the smell of alcohol on a suspect's breath, can constitute competent evidence to support a DWI charge. *See Johnson v. State,* 337 Ark. 196, 987 S.W.2d 694 (1999) (sufficient evidence of intoxi-
cation where appellant was driving erratically and left of center, smelled of alcohol, was unable to stand upright without support, was unsteady on his feet, had bloodshot eyes, and refused to submit to breath or field sobriety tests). Thus, intoxication for a DWI conviction is not dependent on evidence of blood-alcohol testing where other sufficient evidence of intoxication exists. *See Mace v.*

*State*, 328 Ark. 536, 944 S.W.2d 830 (1997). This is so because the General Assembly has provided that a person can be found guilty of a DWI if he or she either (1) operates a motor vehicle while intoxicated or (2) operates a motor vehicle with a blood-alcohol content of .10 percent or more. *See State v. Johnson*, 326 Ark. 189, 931 S.W.2d 760 (1996); *see also* Ark. Code Ann. § 5-65-103(a) and (b) (Repl. 1997).

■ The instant case does not involve facts where a co-worker or an acquaintance testified to the smell of alcohol on Flowers's breath. It is a case where two people working in the medical field on the day of the accident entered their objective assessments on separate medical records. One was an emergency medical technician; the other a registered nurse. The EMT's report was not only that he smelled alcohol on Flowers but that the smell was "strong." The registered nurse smelled alcohol on Flowers's breath. Surely this testimony is equal in trustworthiness to that of a police officer in the field. When this testimony is coupled with Flowers's own admission of heavy beer consumption the night before as well as the circumstantial evidence of beer consumption on the jobsite and Flowers's habitual consumption of beer, we hold that there is substantial evidence to support the Commission's finding of the presence of alcohol.

■ We further agree with the Commission that Flowers failed to rebut the presumption that the presence of alcohol substantially caused him to lose his balance. He presented no witnesses to the contrary, and his own testimony lacked credibility according to the findings of the ALJ, which the Commission adopted. Accordingly, we affirm the Commission and reverse the decision of the court of appeals.

THORNTON, J., not participating.