Stan JACKSON *v.* CITY of BLYTHEVILLE
CIVIL SERVICE COMMISSION

00-1409                                          43 S.W.3d 748

Supreme Court of Arkansas
Opinion delivered May 24, 2001

*Buchholz, Sassin & DeMaio, P.L.L.C.,* by: *F. Bady Sassin* and *Robert W. Buchholz,* for appellant.

*Mike Bearden,* Blytheville City Attorney, for appellee.

ROBERT L. BROWN, Justice. Appellant Stan Jackson appeals from an order granting summary judgment in favor of

appellee City of Blytheville Civil Service Commission (Commission).[1] We affirm the order.

In 1993, Stan Jackson was the Fire Chief for the City of Blytheville. In late 1993, Jackson chose to participate in the Deferred Retirement Option Plan (DROP) for fire fighters. Jackson completed his participation in DROP and retired on November 1, 1998.[2] On November 2, 1998, the Commission unanimously voted to rehire Jackson as the City's Fire Chief. Jackson was rehired as Fire Chief on November 3, 1998, with an effective rehire date of November 4, 1998.

On April 5, 1999, the Attorney General for the State of Arkansas issued an opinion to State Representative Ann H. Bush of Blytheville answering the question of whether the Commission could rehire a fire chief after he had participated in DROP. The Attorney General concluded that based on Ark. Code Ann. § 24-11-830, the Commission could not. On April 16, 1999, the Commission unanimously adopted a motion requiring Jackson to retire as Fire Chief on or before May 3, 1999. The motion stated that Jackson's failure to comply with the request would result in termination by the Commission. Jackson did not comply with the request for retirement. As a result, on May 5, 1999, the Commission unanimously voted to terminate Jackson as Fire Chief.

Following the termination, Jackson requested a hearing before the Commission, and after that hearing, the Commission upheld Jackson's termination. Jackson appealed that action to circuit court on the issues of whether Jackson was wrongfully rehired after his DROP participation and then wrongfully terminated. Both Jackson and the Commission moved for summary judgment, and the circuit court granted summary judgment in favor of the Commission.

Jackson raises the same issues on appeal as he did in his appeal before the circuit court. He contends that the operable statutes

---

[1] At various times in the record and briefs, the case is styled "In re: Stan Jackson" and the appellant is named "Stanley Jackson." The appellee, at times, is referenced as "City of Blytheville and Blytheville Civil Service Commission." For ease of reference, we have settled on the style and parties as set out in this opinion.

[2] Jackson's five-year participation apparently ran from November 1, 1993, to November 1, 1998. His Member Election Form, however, shows the beginning and end of his participation as January 1, 1994, and January 1, 1999.

permit the rehiring of a person who has completed DROP partici-
pation or, alternatively, that those statutes do not specifically pro-
hibit rehiring. The statutes at issue in this case are Ark. Code Ann.
§§ 24-11-827 and 24-11-830 (Repl. 1996, Supp. 1999). Section
24-11-827 concerns the issue of a retired member returning to
service and read in pertinent part on November 1, 1993:

> (a) Notwithstanding any other provision of the law to the
> contrary, should an age or service retirant return March 1, 1986, or
> later, to employment in a position covered by the firemen's fund
> from which he retired, no pension payments shall be paid him for
> the period of such reemployment, and he may make member
> contributions to the system as if he were an active member during
> such reemployment.

Section 24-11-830 is the DROP statute and read in pertinent part
on November 1, 1993:

> (a) In lieu of terminating employment and accepting a service
> retirement pension pursuant to §§ 24-11-801 *et seq.*, any full-paid
> fire fighter who is a member of a firemen's pension and relief fund
> who has not less than twenty (20) years of credited service and who
> is eligible to receive a service retirement pension may elect to
> participate in the Arkansas Fire Fighters' Deferred Retirement
> Option Plan and defer the receipt of benefits in accordance with
> the provisions of this section, provided the local firemen's pension
> and relief fund board of trustees approves the participation in the
> plan.

> (c)(1) The duration of participation in the Arkansas Fire
> Fighters' Deferred Retirement Option Plan for active full-paid fire
> fighters shall not exceed five (5) years.

> (2) At the conclusion of a member's participation in the
> Arkansas Fire Fighters' Deferred Retirement Option Plan, the
> member *shall* terminate employment with *all* participating munici-
> palities as a fire fighter and *shall* start receiving the member's
> accrued monthly retirement benefit from the firemen's pension and
> relief fund.

[Emphasis added.][3]

---

[3] Act 762 of 2001 extended the duration of participation in DROP to seven years.

■■ The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Shelton v. Fiser*, 340 Ark. 89, 8 S.W.3d 557 (2000); *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998), *supp. opinion on denial of reh'g*, 332 Ark. 189, 961 S.W.2d 712 (1998). The evidence is viewed most favorably for the person resisting the motion, and any doubts or inferences are resolved against the moving party. But in a case where the parties agree on the facts, this court simply determines whether the appellee was entitled to judgment as a matter of law. *Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau*, 342 Ark. 398, 39 S.W.3d 440 (2000); *City of Little Rock v. Pfeifer*, 318 Ark. 679, 887 S.W.2d 296 (1994).

■ With regard to statutory construction, we have recently said:

> We have held that issues of statutory construction are reviewed *de novo* on appeal, and it is for the appellate court to determine the meaning of a statute. *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). The appellate court is not bound by the trial court's interpretation, but in the absence of a showing that the trial court misinterpreted the law, the trial court's interpretation will be accepted as correct. *Id*. This case involves a first-impression interpretation of a statute. The basic rule of statutory construction is to give effect to the intent of the Legislature. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999). The Workers' Compensation Law must be strictly and literally construed by the Commission and the courts, and a particular provision in a statute must be construed with reference to the statute as a whole. *Flowers v. Norman Oaks Constr. Co.*, 341 Ark. 474, 17 S.W.3d 472 (2000). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id*. The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. The statute should be construed so that no word is left void, superfluous, or insignificant; and meaning and effect must be given to every word in the statute if possible. *Id*. If the language of the statute is plain and unambiguous, the analysis need go no further. *Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997).

*Aloha Pools & Spas, Inc.*, 342 Ark. at 403-404, 39 S.W.3d at 443. There is, too, the principle recognized in this state that pension laws

are construed liberally in favor of those benefitted. *Looper v. Gordon*, 201 Ark. 841, 147 S.W.2d 24 (1941).

This court has never interpreted the two statutes before us today. We turn then to the legislative history of the two statutes. Section 24-11-827 was enacted by Act 429 of 1991 and deals with "service retirants" who return to employment after retiring. It specifies the effect of contributions made to the retirement system for a period of less than three years and for a period of more than three years after reemployment. The section was amended by the General Assembly during the First Extraordinary Session in 1992 but not in a manner material to the instant case.

Section 24-11-830 was enacted by Act 1004 of 1993. The Act contained a general repealer clause and provided that fire fighters who are members of the pension and relief fund with twenty or more years of service and who are able to receive a retirement pension may elect to participate in the DROP program. The duration of that participation could not exceed five years in 1993. To repeat, the Act provides:

> (2) At the conclusion of a member's participation in the Arkansas Fire Fighters Deferred Retirement Option Plan, the member shall terminate employment with all participating municipalities as a fire fighter, and shall start receiving the member's accrued monthly retirement benefit from the firemen's pension and relief fund.

Ark. Code Ann. § 24-11-830(c)(2) (Supp. 1999). During DROP participation, contributions by the municipalities and fire fighters shall continue but receipt of benefits will be deferred. At the end of the DROP period, the participant may receive a lump sum payment of amassed contributions or any other approved method of payment.

Jackson's core argument is that nothing in the DROP statute prohibits rehiring after a DROP termination. In addition, he contends that § 24-11-827 contemplates that service retirants may reenter employment and commence anew contributions to the retirement system. According to Jackson, when read together, the statutes authorize rehiring in the same position after DROP participation and termination.

We disagree. The DROP program provides an option to normal retirement benefits, and Jackson elected to participate in

DROP. Thus, he was subject to the precise terms of § 24-11-830. To our way of thinking, the issues in this case turn in large part on what the DROP statute means when it says "the members shall terminate employment with all participating municipalities." The widely recognized definition of "terminate" is "to bring to an end." *See, e.g., Merriam-Webster's Collegiate Dictionary*, p. 1216 (10th ed. 1997). Rehiring a fire fighter after the statute mandates that he end his employment with the City and commence receiving retirement benefits runs directly counter to the express intent of the DROP statute. In short, rehiring as was done in the instant case does not bring an end to employment but does exactly the opposite.

■ We note, of course, that Jackson was not a typical service retirant due to his DROP election, and for that additional reason, we conclude that the General Assembly did not intend for § 24-11-827 to apply to his situation. Moreover, the DROP statute, which was enacted after § 24-11-827, contains a general repealer for all laws in conflict with it which, we believe, renders § 24-11-827 inapplicable to DROP participants. We further observe that there has been no legislative clarification of the DROP statute following the Attorney General's opinion in 1999. Finally, with regard to the principle of liberal construction of pension statutes in favor of those benefitted, we agree with the Commission that deferred income plans, which necessarily involve deferred income taxes, must comply with statutory mandates or else run the risk of nonqualification with the Internal Revenue Service.

■ We hold that § 24-11-830 is plain and unambiguous and provided a separate and distinct retirement plan option for fire fighters. The circuit court correctly concluded that Jackson's rehiring violated the statute's terms.

Affirmed.