847 A.2d 44

**In re NOMINATION PETITION OF Joseph DRISCOLL, Democratic Candidate for Congress 15th District.**

**Appeal of Anthony Rybak.**

Supreme Court of Pennsylvania.

Submitted March 10, 2004.

Decided April 6, 2004.

Anthony Edward Rybak, for Anthony E. Rybak, appellant.

Gregory M. Harvey, Philadelphia, John Joseph Connelly, Jr., Harrisburg, Malcolm J. Gross, Allentown, for Joseph Driscoll, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

### OPINION OF THE COURT

Justice NIGRO.

Appellant Anthony Rybak appeals from the Order of the Commonwealth Court which denied his request to set aside the nomination petition of Joseph Driscoll ("Candidate"), a candidate for the Democratic Party nomination for the office of Representative in the United States Congress for the 15th Congressional District. For the reasons set forth below, we affirm the Commonwealth Court's order.

On or before February 17, 2004, Candidate filed a nomination petition with the Secretary of the Commonwealth containing approximately 2,500 signatures from registered Democratic Party members in favor of his candidacy in the April 27th primary election for the Democratic nomination for the Representative seat in the 15th Congressional District.[1] The nomination petition stated that Candidate lives in Allentown, Pennsylvania, Lehigh County, which is in the 15th Congressional District. Along with his nomination petition, Candidate also filed an affidavit, in which he stated, among other things, that

1. Although Candidate was seeking a federal office, he is nevertheless required to abide by the election procedures in the Pennsylvania Election Code. *See* Act of June 3, 1937, P.L. 1333, § 1, (25 P.S. § 2600 *et seq.*); *see also* U.S. Const., art. I, § 4, cl. 1 (Unless Congress passes a law preempting state law, "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."); *U.S. v. Classic*, 313 U.S. 299, 311, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) ("[T]he states are given, and in fact exercise, a wide discretion in the formulation of a system for the choice by the people of representatives in Congress."). Therefore, pursuant to the procedures in the Election Code, Candidate was required to submit to the Secretary of the Commonwealth a nomination petition containing at least one thousand valid signatures by February 17th. *See* 25 P.S. § 2872.1(12); *see also id.* § 2873(a).

his residence was in Allentown, Pennsylvania, and his election district was Lehigh County.[2]

Several days after Candidate filed his nomination petition and affidavit, Appellant filed a petition to set aside the nomination petition with the Commonwealth Court. According to Appellant, Candidate improperly stated in his nomination petition and affidavit that his residence was in Allentown when he actually resides in Haverford, Pennsylvania, Montgomery County, an address that is outside of the 15th Congressional District. Appellant acknowledged that Candidate is not required by the U.S. Constitution to live in the 15th Congressional District to run for the office of Representative in Congress for the 15th Congressional District,[3] but neverthe-

2. Section 910 of the Election Code requires that a candidate for the office of Representative file an affidavit with his nomination petition stating:

(a) his residence, with street and number, if any, and his post-office address; (b) his election district, giving city, borough, town or township; (c) the name of the office which he consents to be a candidate; (d) that he is eligible for such office; (e) that he will not knowingly violate any provision of [the Election Law], or of any other law regulating and limiting nomination and election expenses and prohibiting corrupt practices in connection therewith; (f) unless he is a candidate for judge of a court of common pleas, the Philadelphia Municipal Court or the Traffic Court of Philadelphia, or for the office of school director in a district where that office is elective or for the office of justice of the peace that he is not a candidate for nomination for the same office of any party other than the one designated in such petition; (g) if he is a candidate for a delegate, or alternate delegate, member of State committee, National committee or party officer, that he is a registered and enrolled member of the designated party; (h) if he is a candidate for delegate or alternate delegate the presidential candidate to whom he is committed or the term "uncommitted"; and (i) that he is aware of the provisions of section 1626 of this act [footnote omitted] requiring pre-election and post-election reporting of campaign contributions.

25 P.S. § 2870. The affidavit is a form prepared by the Bureau of Elections, on which a candidate must fill in his name, residence, and election district. The candidate must then sign the form before a notary swearing or affirming that his name, residence, and election district are as specified on the form and that he satisfies all of the requirements enumerated in section 910 of the Election Code.

3. See U.S. Const., art. I, § 2, cl. 2 (candidates for Congress must be 25 years old, a citizen of the United States, and an inhabitant of the State that he is chosen to represent); see also U.S. Term Limits, Inc. v. Thorton, 514 U.S. 779, 802, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995)

less asserted that Candidate's misrepresentation of his residency required that his nomination petition be set aside. Alternatively, Appellant requested that the court require Candidate to amend his petition and affidavit to reflect his residence in Haverford.

In response to Appellant's petition, Candidate filed a motion to amend his nomination petition and affidavit to state that his legal residence is in Haverford. Candidate further requested that the court grant him twenty days to recirculate the amended petition to those voters who signed his original petition.[4] On March 1, 2004, the Commonwealth Court held a hearing on Appellant's challenge and Candidate's motion. During the hearing, Candidate's counsel stipulated to the fact that Candidate's legal residence according to the Election Code is in Haverford because that is where his spouse lives. *See* N.T., 3/1/2004, at 17–18, 29–30. Candidate also testified, however, that on January 28, 2004, he began renting a townhouse in Allentown, and on that same day, he registered to vote in Lehigh County using the Allentown residence.[5] *See id.* at 15–17. Candidate's Allentown address and new election district were then placed on Candidate's nomination petition, which was circulated among electors in the 15th Congressional District for signatures. According to Candidate, however, while the nomination petition was circulating, he consistently conceded during public speeches that he was from Montgomery County and new to the 15th District. *See id.* at 21. Moreover, before Candidate's petition was filed, on February

(qualifications for candidate for Congressional representative are limited to those in U.S. Constitution).

4. Candidate sought to establish that he could obtain 1,000 new signatures, as required by section 912.1(12) of the Election Code, from those voters who had signed his petition with the Allentown address.

5. Candidate explained that he registered to vote in Lehigh County because he "thought that when you spend most of your time at a place and you intend to move there, you register to vote." *See* N.T., 3/1/2004, at 39. He further testified that when he went to the voter registration office in Lehigh County on January 28th, he stated that he was registered to vote in Montgomery County, but he had rented a house in Allentown and he wanted to know when he could register to vote in Lehigh County. *See id.* at 14–15, 16, 29. He was permitted to register that day.

9, 2004, an article was published in The Morning Call, a newspaper based in Allentown, regarding an interview the author had with Candidate. The article focused on the fact that Candidate is from Haverford and not the 15th Congressional District. *See* Jeff Miller, *Driscoll: Issues count, not geography * * 15th District candidate isn't from the Valley, but the Main Line, The Morning Call,* Feb. 9, 2004, at A.1. However, the article also stated that Candidate recently rented a townhouse for himself in the 15th Congressional District and although his wife and children plan to remain in Haverford for the present time, the entire family intends to move into the District permanently if Candidate wins the election. *See id.* The article quoted Candidate as saying that he would be happy to speak to voters to prove that the campaign "is about issues and ideas and people, not geography." *Id.* Approximately one week after this article was published, Candidate filed his nomination petition and affidavit stating that his residence was in Allentown and his election district was in Lehigh County.

The day after the hearing, on March 2, 2004, the Commonwealth Court entered an order denying Appellant's request to set aside Candidate's nomination petition, but granting Appellant's request to require Candidate to amend his petition and affidavit to reflect his residence as in Haverford. The court further denied Candidate's motion to permit him to recirculate his amended petition among the voters who had previously signed his petition. Finally, as a result of its decision not to set aside Candidate's petition, the court directed the Secretary of the Commonwealth to certify Candidate as a candidate in the April 27th primary election for the Democratic Party nomination for the office of Representative for the 15th Congressional District.

In a memorandum opinion filed with its order, the Commonwealth Court explained that because Candidate is not required to live in the 15th Congressional District to run for the office of Representative of that district, the fact that he improperly stated his residence on his nomination petition and affidavit "is immaterial insofar as it relates to [Candidate's] qualifications

for the office." Commw. Ct. Op., 3/2/2004, at 5 (Slip). Furthermore, the court found that the evidence indicated that Candidate did not intend to deceive those electors who signed his petition as to his actual residence because not only did he forthrightly admit that he listed the incorrect legal residence on his petition, but he also publicly acknowledged that he is not from the 15th Congressional District and that his family continues to reside in Haverford during the newspaper interview conducted and published before his petition and affidavit were filed. *See id.* at 5–7. Moreover, the court credited Candidate's testimony that his family intends to move into the district if Candidate is elected.

The Commonwealth Court therefore concluded that because "the Election Code should be construed liberally 'so as to not deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice,'" *id.* at 8 (*quoting In re Ross Nomination Petition,* 411 Pa. 45, 190 A.2d 719 (1963)), "the intent of the Election Code is best served by allowing [Candidate] to remain on the ballot, but with an amended affidavit." *Id.* The court decided not to permit Candidate to recirculate his amended nomination petition to those electors who had signed his petition because allowing "[s]uch [an] action would create a new, unprecedented and potentially cumbersome remedy with unknown possible implications...."[6] *Id.* at 6–7. The court additionally found that because Candidate was required to amend his affidavit to reflect his Haverford residence, that residence would be listed with his name on the ballot in the April 27th election and therefore "the electors, if not already aware through the media that [Candidate] is not a resident of the 15th Congressional District, will be so informed by the time of the Primary Election, and may make an informed choice at that time." *Id.* at 8.

6. The court explained that such a remedy could implicate due process and equal protection concerns because although a court may be able to grant such relief where a nomination petition was filed well before an election was to be held, a court would be foreclosed from granting such relief in other cases where an election was to take place a short time after the petition was filed. *See* Commw. Ct. Op., at 6–7.

Appellant now appeals to this Court arguing that the Commonwealth Court erred in refusing to set aside Candidate's nomination petition because Candidate's failure to properly state his address on his affidavit rendered both his affidavit and nomination petition "void and invalid and thus not amendable." Appellant's Bf., at 19. Appellant further argues that Candidate's nomination petition must be set aside based on the Commonwealth Court's decision in *In re Nomination Petitions of McIntyre,* 778 A.2d 746 (Pa.Commw.2001), which this Court affirmed. *See In re Nomination Petitions of McIntyre,* 564 Pa. 670, 770 A.2d 326 (2001). We disagree.[7]

 This Court may only reverse a Commonwealth Court's order concerning the validity of challenges to a nomination petition if the Commonwealth Court's findings of fact are not supported by substantial evidence in the record, there was an abuse of discretion, or there was an error of law. *See In re Nomination Petition of Flaherty,* 564 Pa. 671, 770 A.2d 327, 331 (2001). Moreover, in reviewing election issues, we must consider the longstanding and overriding policy in our Commonwealth to protect the elective franchise. *See Weiskerger Appeal,* 447 Pa. 418, 290 A.2d 108, 109 (Pa.1972). In promoting that policy, this Court has made clear that the Election Code must "be liberally construed to protect a candidate's right to run for office and the voters' right to elect the candidate of their choice." *Flaherty,* 770 A.2d at 331; *see also Weiskerger Appeal,* 290 A.2d at 109. Furthermore, nomination petitions are presumed to be valid and an objector has the burden of proving that a nomination petition is invalid. *See* 25 P.S. § 2937.

According to section 977 of the Election Code, where a court finds that a nomination petition is defective pursuant to the provisions of section 976, the petition shall be set aside. *See id.* § 2937. Meanwhile, section 976 of the Election Code provides that "[n]o nomination petition, nomination paper or nomination certificate shall be permitted to be filed if ... it

7. As the instant action was originally commenced in the Commonwealth Court, this Court has exclusive jurisdiction over this matter pursuant to 42 Pa.C.S. § 723(a).

contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits." *Id.* § 2936. Notably, section 977 also provides, however, that where "objections relate to material errors or defects apparent on the face of the nomination petition or paper, the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms . . . as the court may specify." *Id.* § 2937.

As noted above, the Election Code requires that a candidate seeking to run for office in Pennsylvania submit with his nomination petition, an affidavit, stating, among other things: "(a) his residence, with street and number, if any, and his post-office address; [and] (b) his election district, giving city, borough, town or township. . . ." *Id.* § 2870. In addition, section 704 of the Election Code provides that a person's residence must be determined as follows:

In determining the residence of a person desiring to register or vote, the following rules shall be followed so far as they may be applicable:

(a) That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning.

(b) A person shall not be considered to have lost his residence who leaves his home and goes into another state or another election district of this State for temporary purposes only, with the intention of returning.

(c) A person shall not be considered to have gained a residence in any election district of this State into which he comes for temporary purposes only, without the intention of making such election district his permanent place of abode.

(d) The place where the family of a married man or woman resides shall be considered and held to be his or her place of residence, except where the husband and wife have actually separated and live apart, in which case the place where he or she has resided for two months or more shall be considered and held to be his or her permanent place of abode. . . .

*Id.* § 2814. Thus, as made clear by section 704, while a person may have several residences, only one of those residences may qualify as that person's residence or domicile for purposes of the Election Code. *See In re Nomination Petition of Prendergast*, 543 Pa. 498, 673 A.2d 324, 327–28 (1996); *In re Nomination Petition of Hanssens*, 821 A.2d 1247, 1251 n. 7 (Pa.Commw.2003), *aff'd*, 573 Pa. 692, 825 A.2d 640 (2003). Moreover, a person cannot simply declare a new residence or domicile by purchasing or renting a home in one location. *See Prendergast*, 673 A.2d at 327–28; *Hanssens*, 821 A.2d at 1251– 52. That person must also have an intent to live in the new residence permanently. *See Prendergast*, 673 A.2d at 327–28; *Hanssens*, 821 A.2d at 1251–52. In addition, if the person is married and not separated from his spouse, he and his spouse must both intend to live in the new residence permanently. *See Prendergast*, 673 A.2d at 327–28; *Hanssens*, 821 A.2d at 1251–52.

■ This Court has explained, "[t]he requirements of sworn affidavits are to insure the legitimacy of information crucial to the election process [and therefore,] the policy of the liberal reading of the Election Code cannot be distorted to emasculate those requirements necessary to assure the probity of the process." *In re Nomination Petition of Cianfrani*, 467 Pa. 491, 359 A.2d 383, 384 (1976). In *Cianfrani*, the evidence showed that the candidate executed an affidavit in which he averred that he was a registered and enrolled member of the Democratic Party when in fact he did not become a registered and enrolled Democratic Party member until the following day.[8] *See id.* at 384. Based on this evidence, this Court determined that the candidate's affidavit was falsely made as even "assuming the absence of any wrongful intent, the fact remains that when the affidavit was taken the facts sworn to were not true." *Id.* We then held that "a false affidavit must

8. The candidate was running for the office of member of the ward executive committee of the Democratic Party for the 55th Ward, 7th Division, City of Philadelphia, and therefore, pursuant to section 910 of the Election Code, he was required to affirm in his affidavit that he was a registered and enrolled member of the Democratic Party. *See supra* n. 2.

[a]t least be equated with the failure to execute the affidavit" and "[s]uch a defect cannot be cured by subsequent conduct and the [candidate's nomination] petition was therefore void and invalid." *Id.; see also Prendergast*, 673 A.2d at 328; *In re Nomination Petition of Cooper*, 163 Pa.Cmwlth. 430, 643 A.2d 717, 720 (1994).

▆ Although our decision in *Cianfrani* seems to mandate that any candidate affidavit containing a false statement must be deemed void and invalid, in *State Ethics Comm'n v. Baldwin*, 498 Pa. 255, 445 A.2d 1208 (1982) this Court indicated that this is not how *Cianfrani* should be read. In *Baldwin*, we explained that "the *Cianfrani* ruling was required to deter *deliberate* attempts to frustrate the election process [and] there was no indication that the rationale of that decision should be applied where the misstatement was unintentional." *Id.* at 1211 (emphasis added). Accordingly, we held in *Baldwin* that although three candidates had stated that they had filed financial interest statements in their affidavits when in fact the statements had not been filed, such an error was amendable because the candidates did not intend to deceive the electorate when they completed their affidavits.[9] *See id.* at 1211–12. Accordingly, pursuant to *Baldwin*, before an affidavit may be declared void and invalid because it contains false information, there must be evidence that the candidate knowingly falsified the affidavit with an intent to deceive the electorate.[10] *See id.; see also McMenamin v. Tartaglione*, 139 Pa.Cmwlth. 269, 590 A.2d 802, 808–10 (1991), *aff'd*, 527 Pa. 286, 590 A.2d 753 (1991).

**9.** The evidence indicated that when one of the candidates signed his affidavit, he had mailed his statement to the Ethics Commission, but the Commission had not yet received it. *See* 445 A.2d at 1211. Similarly, the other two candidates were never given the financial interest statement forms with the packet of papers they had to file and they did not know about the requirements. *See id.*

**10.** Although the General Assembly amended the Ethics Act to supersede *Baldwin* by making the failure to file a financial disclosure statement a fatal defect to a nomination petition, *see* 65 Pa.C.S. § 1104(b)(3), *In re Nomination Petition of Cioppa*, 533 Pa. 564, 626 A.2d 146, 148–49 (1993), the rationale of *Baldwin* remains viable where, as here, there is no express legislative directive that a defect in the candidate's affidavit is a *per se* fatal defect.

In the instant case, Candidate concedes that the residence he gave on both his nomination petition and affidavit is incorrect because pursuant to the rules in section 704 of the Election Code, his residence or domicile is in Haverford with his wife and children. Nevertheless, Candidate asserts that based on the Commonwealth Court's decision in *In re Nomination Petition of Hacker*, 728 A.2d 1033 (Pa.Commw.1999), his nomination petition should not be set aside because he may reside in Haverford and run for Representative of the 15th Congressional District and because he made an innocent mistake of law and did not intend to deceive the electorate when he listed the Allentown address as his residence on his nomination petition and affidavit.

In *Hacker*, William Hacker, a candidate for sheriff of Berks County, Pennsylvania, listed an address in Kutztown, Pennsylvania, as his residence on his nomination petition and affidavit. Subsequently, an objector sought to set aside Hacker's nomination petition, alleging that he incorrectly stated his residence because he actually resided in Fleetwood, Pennsylvania. The objector presented evidence from witnesses that Hacker and his wife were living in the Fleetwood home and not the Kutztown home. Nevertheless, Hacker testified that "he had purchased the Kutztown home, was attempting to refurbish it and that he had listed his Fleetwood home up for sale." 728 A.2d at 1034. Moreover, Hacker "offered his voter registration card and vehicle registration card, both of which listed his address as the Kutztown residence." *Id.*

In reviewing the evidence, the trial court found that although the evidence indicated that Hacker's residence for purposes of the Election Code was in Fleetwood rather than Kutztown, that defect did not require that Hacker's petition be set aside. *See id.* The court explained that the Kutztown address did not bar Hacker from running in the election because it, like the Fleetwood address, was in Berks County. *See id.* Moreover, the court found that Hacker's affidavit could not be characterized as false because his testimony established that he truly believed that he was a resident of

Kutztown. *See id.* On appeal, the Commonwealth Court affirmed. *See id.* at 1035.

Notably, two years after *Hacker*, the Commonwealth Court decided *In re Nomination Petition of McIntyre*, which involved facts similar to those in *Hacker* and which, as noted above, Appellant argues supports his position. In *McIntyre*, the candidate, Daniel McIntyre, listed an address in Upper St. Clair, Pennsylvania as his residence on his nomination petitions.[11] However, in the affidavits filed with his petitions, McIntyre averred that he resided in Pittsburgh. After a challenge was filed to McIntyre's petitions, the Commonwealth Court found that McIntyre's Pittsburgh address on his affidavits was false and as a result, set aside McIntyre's petitions. *McIntyre*, 778 A.2d at 747. On appeal, this Court vacated the Commonwealth Court's order and remanded "for proceedings consistent with [the Commonwealth Court's] precedent. *See In re Nomination Petition of Hacker*, 728 A.2d 1033, 1035 (Pa.Commw.1999) (concluding that 'we do not believe that [a candidate's] listing a different address as his residence is such a material defect in his candidate's affidavit that it would cause his nominating petition to be set aside because it is undisputed that both of his addresses are in [the county in which office was sought]')." [12] *In re Nomination Petitions of McIntyre*, 564 Pa. 651, 770 A.2d 315, 316 (2001). We further stated: "The Commonwealth Court may make specific find-

**11.** McIntyre had filed two separate nomination petitions, one for the office of Judge of Court of Common Pleas of Judicial District No. 5 in the Democratic Primary Election and one for the office of Judge of the Court of Common Pleas of Judicial District No. 5 in the Republican Primary Election. Notably, while McIntyre listed his residence as in Upper St. Clair on his nomination petitions, on certain pages of both petitions he included a notation stating that he was moving to a Pittsburgh address. *See* 778 A.2d at 750 n. 5.

**12.** We also stated in a footnote:

In *Hacker*, the candidate also listed the different address on his nomination petitions, as was the case here. This Court presently expresses no opinion as to the merits of the *Hacker* decision, since Appellees have not questioned its validity; our present order is based solely upon *Hacker's* status as prevailing precedent of the Commonwealth Court.

770 A.2d at 316 n. 1.

ings concerning [McIntyre's] intentions or other factors that would bear upon the determination of whether [McIntyre] should be included on the primary ballot." *Id.*

On remand, the Commonwealth Court found that while McIntyre testified that his residence was in Pittsburgh, it rejected this testimony as not credible because "the state of facts show that [McIntyre] truly resides and is domiciled [in Upper St. Clair] where his wife continues to reside." [13] 778 A.2d at 753. The court then went on to review its decision in *Hacker* and found that although the *McIntyre* facts were similar to *Hacker* in that McIntyre's residence in Upper St. Clair did not disqualify him from running for the position he was seeking, the facts in the two cases were otherwise distinguishable.[14] *See id.* at 754. The court found that contrary to the facts in *Hacker,* the evidence before the court regarding McIntyre's actions showed that he had intended to deceive the electorate when he listed the Pittsburgh address as his residence on his affidavits. *See id.* According to the court, this deceptive intent was "reflected by the disparity on the face of the Nomination Petitions and by McIntyre's failure to dispel this disparity through his testimony." *Id.* Moreover, the court found that based on the evidence, it could "not find that McIntyre believes that his residence is located at the address listed on his Candidate's affidavit." *See id.* Finally, the court stated that "McIntyre, being an attorney of the bar of the Supreme Court, is held to a standard of professional conduct

13. McIntyre testified that although he had resided in Upper St. Clair, he had recently moved into his mother-in-law's residence in Pittsburgh to help care for her. *See* 778 A.2d at 752. He further explained, however, that he did not pay rent to his mother-in-law, his wife was still living at the Upper St. Clair address, and he slept at both homes. *See id.* Moreover, McIntyre testified that while he and his wife planned to purchase a home in Pittsburgh at some point in the future, they had not listed their Upper St. Clair home for sale because they were hosting their daughter's wedding at that house at a later date. *See id.*

14. As McIntyre was running for the office of Judge of the Court of Common Pleas in the fifth judicial district, he was required to live in that district. However, both the Upper St. Clair address and the Pittsburgh address were in the fifth judicial district, and thus, the mere fact that he resided in Upper St. Clair was not sufficient to preclude him from running for the office of Judge.

especially when aspiring to a judicial position, and must exhibit unquestionable candor of all matters. This is especially true when the candor is for review of the electors." *Id.* Accordingly, the court held that because Candidate improperly filed his affidavits with "an intent to deceive" the electors, the error on his affidavits was a material defect that could not be cured and as a result, his petitions must be set aside. *See id.* On appeal, this Court affirmed the Commonwealth Court's decision. *See In re Nomination Petition of McIntyre,* 564 Pa. 670, 770 A.2d 326 (2001).

In reviewing the evidence in the instant case in light of the law set forth above, we hold that the Commonwealth Court did not abuse its discretion or commit an error of law in permitting Candidate to amend his nomination petitions and affidavit. Particularly, we find that the court properly determined that Candidate's incorrect listing of his address on his petition and affidavit was not a material defect because he is not required to live in the 15th Congressional District to run as Representative of that district. We additionally find that the facts were sufficient to support the Commonwealth Court's finding that Candidate, unlike McIntyre or the candidate in *Cianfrani,* did not intentionally falsify his affidavit to deceive the electorate. *See Baldwin,* 445 A.2d at 1211 (an affidavit is false only where "the misstatement was knowingly contrived"); *see also,* 25 P.S. § 3502.1 (candidate must "knowingly" falsify affidavit to be liable for such a charge under statute); *Commonwealth v. Brown,* 149 Pa.Super. 130, 28 A.2d 259 (1942) (same), *aff'd on other grounds, Commonwealth v. Brown,* 346 Pa. 192, 29 A.2d 793 (1943). Rather, the evidence indicates that Candidate listed his Allentown address as his residence and Lehigh County as his election district because he believed that his residence and election district had changed to those places once he rented a home in Allentown and registered to vote in Lehigh County based on that address.[15] This is

15. Unlike the factual scenario in *McIntyre* where McIntyre only claimed to have moved into his *mother-in-law's* residence, Candidate actually has his own "residence" in Allentown. Moreover, Candidate is not an attorney, as McIntyre was.

apparent from the evidence that Candidate freely acknowledged during the newspaper interview conducted while his petition was being circulated that he was from Haverford, that his wife and children live in Haverford, and that he only recently rented a townhouse in Allentown. Moreover, unlike McIntyre, Candidate candidly admits that he stated the improper legal residence on his petition and affidavit and thus the residence stated on his petition and affidavit now needs to be changed. Therefore, because Candidate's Haverford address does not disqualify him from running for the office of Representative and because the evidence supports the Commonwealth Court's finding that Candidate did not intentionally falsify his affidavit so as to deceive the public, we hold that the Commonwealth Court did not abuse its discretion in finding that Candidate's incorrect listing of his residence and election district was an amendable defect.[16] Accordingly, the Commonwealth Court's order is affirmed.

**16.** As neither Appellant nor Candidate request this Court to direct that Candidate be permitted to recirculate his nomination petition to those electors who signed it, we need not consider if that remedy which Candidate suggested below, is proper. We would note our agreement with the sentiments of the Commonwealth Court below, however, that such a remedy could lead to due process and equal protection problems.