18 A.3d 1139

**In re Nomination Petition of Frank RIZZO for City Council at Large for the Republican Party.**

**Objections of Ross M. Wolfe and Denise M. Furey.**

**Appeal of Ross M. Wolfe and Denise M. Furey.**

**In re Nomination Petition of Margaret M. Tartaglione for City Commissioner for the Democratic Party.**

**Objections of Gordon W. Sensiba, Stanley J. Shapiro, M. Karen Bojar and Gloria Gilman.**

**Appeal of Gordon W. Sensiba, Stanley J. Shapiro, M. Karen Bojar and Gloria Gilman.**

**In re Nomination Petition of Marian B. Tasco for City Council Ninth Councilmanic District for the Democratic Party.**

**Objections of Antoine Thomas and Leta Thomas.**

**Appeal of Antoine Thomas and Leta Thomas.**

Supreme Court of Pennsylvania.

Submitted April 13, 2011.

Decided April 29, 2011.

Ellen Mattleman, for Amicus Curiae Committee of Seventy.

Lawrence M. Otter, Harrisburg, for Amici Curiae Caucus of Philadelphia Republican Ward Leaders, National Conference of Public Officials, Inc. and Roosevelt–Bentman Trust for American Voters.

Louis Lawrence Boyle, for Bureau of Elections, Department of State.

Frederick L. Voigt, for City Commissioners of Philadelphia.

J. Matthew Wolfe, Law Offices of J. Matthew Wolfe, PC, for Ross M. Wolfe and Denise M. Furey.

Dennis J. Cogan, Cogan, Petrone & Assoiates, Philadelphia, Christopher D. Warren, for Frank Rizzo.

Joseph Lawrence Doherty IV, Oliver David Griffin, Spector Gadon & Rosen, P.C., Philadelphia, for Stanley J. Sapiro, Gordon W. Sensiba, M. Karen Bojar, Gloria Gilman.

Christine M. Beloff, Beloff & Hope, P.C., Philadelphia, for Margaret M. Tartaglione.

Joseph Lawrence Doherty IV, Oliver David Griffin, Spector Gadon & Rosen, P.C., Philadelphia, for Antoine Thomas and Leta Thomas.

Carl E. Singley, Ciardi Ciardi & Astin, Philadelphia, for Marian B. Tasco.

## *ORDER*

PER CURIAM.

**AND NOW**, this 29th day of April, 2011, the order of the trial court is **AFFIRMED.**[1]

Justice SAYLOR files a dissenting statement which Chief Justice CASTILLE joins.

1. Our decision today does not preclude the trial court from considering any application for attorney's fees.

Justice SAYLOR, dissenting.

These appeals arise from objections to the nomination petitions of Frank Rizzo and Marian Tasco to run for Philadelphia City Council, and of Margaret Tartaglione to run for City Commissioner. Although separate objections were filed, the common pleas court consolidated them and addressed them in a single hearing and opinion, as they all involved substantially the same issue. The court also issued a single order, dated March 23, 2011, denying all three objections. Appellants sought review in the Commonwealth Court, which transferred the matter to this Court in view of our exclusive appellate jurisdiction. *See* 42 Pa.C.S. § 722(2); *Egan v. Mele*, 535 Pa. 201, 204 n. 2, 634 A.2d 1074, 1075 n. 2 (1993).

By way of background, in the late 1990s the City of Philadelphia enacted a Deferred Retirement Option Plan ("DROP"), set forth at Section 22–310 of the Philadelphia Code ("Code"). A City employee who elects to participate in DROP makes "an irrevocable commitment to separate from City Service and retire upon ceasing participation in DROP, which they must do no later than four (4) years after entering" the program. PHILA. CODE § 22–310(2). DROP participants cease making pension contributions and their retirement service credit is frozen, although they continue to work for the City at full salary. Their pension payments begin concurrently, but are paid to a special account bearing 4.5% to 10% interest. When the employee retires, the accumulated amount is paid to the employee in a lump sum. *See id.* § 22–310(2), (5).

As for the legislative purpose underlying the DROP program, one set of Appellants explains:

DROP was [enacted] to serve as a revenue-neutral management tool for the City government to improve succession planning arising from the retirement of key employees. Rather than simply offering the commercially acceptable two-weeks notice, the employee would specify a retirement date up to four years into the future.

As an incentive to giving a retirement date in advance, DROP allows an amount equal to [the] participant's normal monthly service retirement benefit at the time of entry into the program to be set aside and grow at a guaranteed rate of interest . . ., with the participant collecting this amount in a lump sum upon retirement. . . .

DROP was never intended for elected officials. DROP is a management tool that allows the City to plan for retirements. Members of the City Council are elected to office. The City does not hire them. There is nothing about the decision of an elected official to retire or of anyone to run for office that is a management prerogative of the City.

Brief for Appellants, No. 23 EAP 2011, at 14 (citations omitted).[1]

As reflected in the above, Appellants raise questions concerning whether and how the City's DROP program was intended to apply to elected City officials. Indeed, much of their argument focuses on whether elected officials—as opposed to hired City employees—were intended to be eligible to participate in the DROP program in light of its underlying purpose. Additionally, some of the controversy, as they frame it, centers on whether elected City officials, once they retire, should be permitted to run for elected office again, notwithstanding that the City may hire them post-retirement as employees. Although these expressions and arguments are informative, I would find that the issues they raise need not be resolved in order to dispose of this appeal because Appellees never genuinely retired (or plan to retire, as the case may be) from their elected offices in the first instance. Thus, in my view, Appellees are ineligible to run for reelection on that basis alone, as explained in more detail below.

1. These Appellants concede that DROP does not expressly exclude elected officials, who, along with hired workers, qualify as City employees. *See id.,* (citing Phila. Code § 22–310(4)). They observe, however, that the ordinance has been amended so that officials elected after September 18, 2009, are excluded from participation in DROP—a revision that they interpret as an effort to "cure this inconsistency" between DROP'S purpose and its language. *See id.* at 14 n. 1, 43 S.W.3d 748.

The pertinent factual and procedural background is not in dispute. Appellees Marion Tasco and Frank Rizzo each filed a nominating petition for reelection to City Council, and Appellee Margaret Tartaglione filed a nominating petition for reelection as a City Commissioner. With their petitions, each Appellee also filed an associated affidavit stating, *inter alia,* that he or she is eligible to run for the office in question. *See* 25 P.S. § 2870(d) (requiring candidates to submit a signed affidavit indicating, *inter alia,* that he or she is eligible for office). Thereafter, Appellants filed objections, seeking to set aside the nominating petitions. The gravamen of these objections, in each case, was that the candidate had made a false statement in his or her affidavit—namely, that he or she was eligible to run for the office in question—and that this false statement had the effect of voiding the associated nomination petition. *See generally In re Cianfrani,* 467 Pa. 491, 494, 359 A.2d 383, 384 (1976) (holding that a false statement on a candidate's affidavit voids the nomination petition).[2] In particular, the objectors alleged that the candidates are ineligible for the offices because they are enrolled in DROP, which requires them to retire.[3]

**2.** This Court has since declined to invalidate nominating petitions in some cases where an unintentional misstatement was made on the accompanying affidavit. *See, e.g., State Ethics Comm'n v. Baldwin,* 498 Pa. 255, 445 A.2d 1208 (1982); *In re Driscoll,* 577 Pa. 501, 847 A.2d 44 (2004). Although the analysis in those matters highlights the unintentional nature of the falsity, the cases are materially distinguishable from the present dispute because, in each, the statement did not pertain to eligibility for office and, moreover, was capable of rectification to bring the affidavit into compliance with the Election Code. *See Baldwin,* 498 Pa. at 262–63, 445 A.2d at 1211–12; *Driscoll,* 577 Pa. at 516, 847 A.2d at 53. That is not the case here, as—under my analysis at least—the affidavits' inaccuracies pertain to eligibility for office, and the only way to rectify them would be to amend the affidavit to state that the candidate is not eligible for office.

**3.** According to the parties' filings, Commissioner Tartaglione enrolled in DROP during her 2004–2008 term. Following enrollment, on November 4, 2007, she was reelected as a City Commissioner for the 2008–2012 term. In early January, 2008, she "retired" and collected a DROP payment in excess of $280,000. Thereafter, on January 7, 2008, she began serving her 2008–2012 term. She now seeks reelection as a City Commissioner for the 2012–2016 term.

In addressing, and ultimately rejecting, this allegation, the trial court observed that: the candidates had sought advice from the City's solicitor regarding whether their participation in DROP would affect their ability to run for reelection; the solicitor responded with an opinion letter construing DROP as permitting the candidates to run for reelection shortly before their mandated retirement date, retire for a single day at the end of their term, and then begin their next term on the following day; and the candidates relied on that interpretation when they stated in their affidavits that they were eligible to hold office. Hence, according to the trial court, even if the candidates were ineligible to hold office, their affidavits were valid because, having relied upon the advice of the solicitor, they did not knowingly make any false statement concerning such eligibility for purposes of Pennsylvania's criminal statute pertaining to false swearing. *See* 18 Pa.C.S. § 4903 (defining false swearing in terms of a person making a false statement when he or she "does not believe the statement to be true").

In the alternative, the court essentially adopted the analysis reflected in the solicitor's letter by developing that the provision of the DROP ordinance relied on by the objectors only mandates that, as a condition of participation in DROP, the employee "make an irrevocable commitment to separate from City service and retire upon ceasing participation in the DROP" within four years after entering the program. *In re Tasco et al.*, Nos. 1016, 1230, 875 March Term 2011, *slip op.* at 4 (C.P. Phila. March 23, 2011) (quoting PHILA. CODE § 22–310(2)). The trial court indicated that the objectors were mistaken insofar as they construed this provision to require a participant to promise to remain permanently separated from City employment. Rather, the court observed that the Code

Furthermore, Councilwoman Tasco enrolled in DROP in December 2007, thus requiring her to retire by December 2011, at which time she will receive a DROP payment in excess of $470,000. She is presently seeking reelection for the 2012–2016 term. It appears that her intention is to retire for approximately one day at the end of her current term. Finally, although it is not made explicit in the trial court's opinion or in the parties' present submissions, Councilman Rizzo's situation appears to be substantially similar to that of Councilwoman Tasco.

specifically permits retired employees to be rehired during the post-retirement timeframe. *See id.* at 4–5 (citing, *inter alia,* PHILA. CODE § 22–310(5)(g)).

Appellants presently take issue with both aspects of the trial court's reasoning. First, they argue that the opinion of a city solicitor is not binding and, moreover, even if a candidate believes the information in his or her affidavit is accurate, its falsity nonetheless voids the affidavit. They urge that this is particularly true where the false statement pertains to the candidate's eligibility to run for the office in question, noting that it would be absurd to allow ineligible persons to run for elective office merely because they falsely, but sincerely, believed they were eligible.

Appellants additionally fault the common pleas court for failing to distinguish between a retired elected official being rehired by the City, versus being reelected by the voters. In this regard, Appellants acknowledge that Section 22–310(5)(g) permits the "rehiring" of a retiree. *See* PHILA. CODE § 22–310(5)(g) ("There is no return to regular employment from a DROP. Once entering the DROP, the employee is in the DROP until separation from City service, at which point the member is retired. A retiree may be re-hired by the City, subject to the provisions of this Title. . . ."). However, they emphasize that this is the only instance under the Code whereby a DROP participant may return to City service. Moreover, they aver that the term "rehire" should not be construed broadly to subsume reelection because the Code, in numerous other sections, distinguishes between an individual being hired, elected, rehired, or reelected. They note, further, that the decision to rehire is made by the City in its own interests, whereas elected officials become City employees by virtue of their choice to run for office, combined with the actions of City voters, leaving the City with no discretion over the decision.

Finally, Appellants reference *Jackson v. City of Blytheville Civil Service Commission,* 345 Ark. 56, 43 S.W.3d 748 (Ark. 2001), a case that involved a similar issue—whether the chief of a municipal fire department could choose to participate in

an optional DROP program, retire for one day in order to collect his accrued retirement benefits, and then be rehired into the same position. The Arkansas court disallowed this tactic, explaining:

> The DROP program provides an option to normal retirement benefits, and Jackson elected to participate in DROP. Thus, he was subject to the precise terms of [the Arkansas DROP statute]. To our way of thinking, the issues in this case turn in large part on what the DROP statute means when it says "the members shall terminate employment with all participating municipalities." The widely recognized definition of "terminate" is "to bring to an end." *See, e.g.*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, p. 1216 (10th ed.1997). Rehiring a fire fighter after the statute mandates that he end his employment with the City and commence receiving retirement benefits runs directly counter to the express intent of the DROP statute. In short, rehiring as was done in the instant case does not bring an end to employment but does exactly the opposite.

*Id.* at 752 (citing ARK.CODE ANN. § 24–11–830 (West 2001)). Appellants aver that the *Jackson* court's reasoning is persuasive and that, if anything, the controlling statutory language in the present case, which requires an "irrevocable commitment to separate from City service and retire," is stronger than the mere "terminate" phraseology appearing in the Arkansas statute. Accordingly, Appellants proffer that, under *Jackson*'s reasoning, Appellees should not be permitted to utilize the approach of retiring for a single day (or even several days) in order to receive DROP benefits, and then start their new term of office.

Appellees respond that nothing in the DROP program requires them to retire permanently from City service, even if their promise to retire for some length of time is irrevocable. Thus, they contend that their commitment, under DROP, to retire was not designed to prevent them from being reelected to a term beginning after their retirement occurs. Appellees argue further that they meet all applicable requirements imposed by law and that DROP does not add any additional

prerequisites for elective office. Accordingly, they interpret Appellants' objections as constituting an improper challenge to the application of the DROP program to elected officials.

In view of DROP'S apparent purpose to enhance the City's ability to manage its workforce in an effective manner, I have reservations concerning whether the program, as it existed in the pre-amendment timeframe, was intended to apply to elected City officials. I also believe that Appellants make a colorable argument that the trial court erred in conflating the distinct issues of whether the City may "re-hire" retired elected officials, and whether such individuals are legally entitled to run for reelection after participating in DROP and receiving their benefits. Nevertheless, and as already stated, I ultimately find that it is not necessary to resolve either of those issues in order to dispose of the present appeal. To my mind, the legal question presented by this appeal is whether a candidate actually retires in compliance with his or her obligation to do so under DROP, where the candidate, pre-retirement, files for reelection to the same office he or she presently holds, is reelected, "retires" for a day or several days, and then commences his or her new term.

On this question, first, I would credit Appellees' position to the degree they point out that the "irrevocable" modifier applies to the promise to retire, and that this does not necessarily indicate that the retirement itself must be, in some sense, "irrevocable." Indeed, under common English usage, the concept of revocation seems to apply more naturally to a promise or decision, than to a period of retirement. That said, however, I would hold that, under the facts of this case, Commissioner Tartaglione did not, and Councilpersons Rizzo and Tasco cannot, fulfill their "irrevocable commitment to separate from City service and retire." PHILA. CODE § 22–310(2).

It is undisputed that the candidates' contemplated "retirements" occurred (or will occur) for only a single day or several days, and only *after* their contemplated or actual reelection to the same post. Under these circumstances, I would find that Appellees' supposed "retirements" amount to a mere pretense,

or sham, designed solely to obtain the lump-sum DROP benefit involved and then to continue on in the same position as before. To paraphrase the Arkansas court, Appellees' actions do not effect a "separation" from City service, but bring about the opposite. On this basis, I would hold that the objectors' challenge to the validity of the candidates' affidavits is meritorious and that the associated nomination petitions must be set aside.

Accordingly, I respectfully dissent from this Court's present Order affirming the decision of the Court of Common Pleas.

Chief Justice CASTILLE joins this Dissenting Statement.