**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| IN RE: NOMINATION PETITION OF MICHAEL HUFF AS DEMOCRATIC CANDIDATE FOR COMMON PLEAS COURT IN THE FIRST JUDICIAL DISTRICT (PHILADELPHIA) | : | No. 11 EAP 2025 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at docket No. |
| | : | 105 MD 2025 dated April 1, 2025. |
| | : | |
| OBJECTION OF: JULIAN DOMANICO | : | SUBMITTED: April 17, 2025 |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MICHAEL HUFF | : | |
| | : | |
| IN RE: NOMINATION PETITION OF MICHAEL HUFF AS DEMOCRATIC CANDIDATE FOR MUNICIPAL COURT JUDGE IN THE FIRST JUDICIAL DISTRICT (PHILADELPHIA) | : | No. 12 EAP 2025 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at docket No. |
| | : | 106 MD 2025 dated April 1, 2025. |
| | : | |
| OBJECTION OF: JULIAN DOMANICO | : | SUBMITTED: April 17, 2025 |
| | : | |
| | : | |
| APPEAL OF: MICHAEL HUFF | : | |

**OPINION**

**JUSTICE BROBSON**                                        **DECIDED: April 24, 2025**

Before this Court are appeals filed by Michael Huff (Appellant/Candidate) from two orders of the Commonwealth Court that (1) granted petitions filed by Julian Domanico (Appellee/Objector) to set aside Candidate's nomination petitions for Democratic Candidate for two judicial offices—Common Pleas Court Judge in the First Judicial District and Municipal Court Judge in the First Judicial District (collectively Judicial Offices), and (2) directed the Secretary of the Commonwealth to remove Candidate's name from the

May 20, 2025 primary election ballot for those Judicial Offices.[1]  At issue is whether Candidate, whose spouse resides in Montgomery County, satisfies the constitutional residency requirement to run for the Judicial Offices.

## I. PROCEDURAL HISTORY

As background, Candidate filed nomination petitions for the Judicial Offices, identifying his residential address at a property located within the First Judicial District (Philadelphia address).  Pursuant to Article V, Section 12(a) of the Pennsylvania Constitution, for an individual to be eligible to be a judge in a court of common pleas or justice of the peace, the individual must reside within his or her respective district for a period of one year prior to election or appointment and during the term of office.  Pa. Const. art. V, § 12(a) ("Other judges and justices of the peace, for a period of one year preceding their election or appointment and during their continuance in office, shall reside within their respective districts, except as provided in this article for temporary assignments.").

Objector filed petitions to set aside those nomination petitions, averring that Candidate does not reside in the First Judicial District; rather, Objector averred that Candidate resides outside the district with his wife and children in Bala Cynwyd, Montgomery County, Pennsylvania.  Objector argued, therefore, that Candidate is

---

[1] The appeal of the Commonwealth Court's order, granting Objector's petition to set aside Candidate's nomination petitions for Judge in the First Judicial District, is docketed at 11 EAP 2025.  The appeal of the Commonwealth Court's order, granting Objector's petition to set aside Candidate's nomination petitions for Municipal Court Judge, is docketed at 12 EAP 2025.  The Commonwealth Court's opinions are largely identical, and any differences—such as references to the Judicial Offices—are minor and inconsequential.  For convenience purposes, this opinion cites only to the Commonwealth Court's opinion docketed at 105 MD 2025, pertaining to the nomination petitions for Judge in the First Judicial District, rather than provide parallel citations.  In most if not all instances, the parallel citation would be at the same page of the slip opinion.

ineligible to appear on the primary election ballots for the Judicial Positions because he does not reside in the First Judicial District. In so doing, Objector relied on Section 704 of the Pennsylvania Election Code (Election Code), 25 P.S. §2814,[2] specifically paragraph (d), which provides:

> In determining the residence of *a person desiring to register or vote*, the following rules shall be followed so far as they may be applicable:
>
> . . .
>
> (d) The place where the family of a married man or woman resides shall be considered and held to be his or her place of residence, except where the husband and wife have actually separated and live apart, in which case the place where he or she has resided for two months or more shall be considered and held to be his or her place of residence.

(Emphasis added.)

The Commonwealth Court conducted an evidentiary hearing on March 28, 2025. Candidate testified and presented testimony from individuals he characterized as his neighbors in Philadelphia. Objector presented the testimony of a Statewide Uniform Registry of Electors (SURE) operator, who testified that Candidate was registered to vote at the Philadelphia address, whereas his wife and oldest child are registered to vote at the Montgomery County address. In opinions accompanying its orders, the Commonwealth Court focused on the following aspects of Candidate's testimony: Candidate and his wife purchased the Philadelphia property, which is a multi-family dwelling, in 1999. In 2004, Candidate and his wife relocated to a home they purchased in Montgomery County, where they raised their three children. Their children are now adults. Candidate and his wife kept the Philadelphia property as a rental property. In May 2024, Candidate moved himself and all of his clothing and possessions into one of the units of the Philadelphia property, where he eats and sleeps every day. He purchased

---

[2] The Election Code was enacted by the Act of June 3, 1937, P.L. 1333, *as amended*, and is codified at 25 P.S. §§ 2600-3591.

a bed, furniture, and other necessities for daily living. He presented various utility, mortgage, and other bills that reflect his address at the Philadelphia property. He performs household tasks around the Philadelphia property. As for his family, his oldest child stayed with him at the Philadelphia property for a few months but now lives in Montgomery County with Candidate's wife. He visits his wife and adult child in Montgomery County several times per month. He remains married to his spouse. The parties stipulated that Candidate's wife resides in Montgomery County and that she would have testified that she and Candidate are not separated.

Turning to Objector's challenge to Candidate's residency, the Commonwealth Court, in considering Candidate's eligibility, explained that it must construe the Election Code "liberally . . . to protect a candidate's right to run for office and the voters' right to elect the candidate of their choice," while simultaneously "strictly enforc[ing] all provisions to prevent fraud." *In re Nomination Petition of Huff* (Pa. Cmwlth., No. 105 MD 2025, filed April 1, 2025), slip op. at 3, n.3 (Dumas, J.) (single-judge) (citing *In re James*, 944 A.2d 69, 72 (Pa. 2008)). The Commonwealth Court, recognizing that, "[u]nder the [Election] Code, courts have equated a candidate's 'residence' with his 'domicile,'" then examined this Court's precedent in *In re Lesker*, 105 A.2d 376 (Pa. 1954), wherein we defined "domicile" as "the fixed, permanent, final home to which one always intends to return," and *In re Driscoll*, 847 A.2d 44 (Pa. 2004), wherein we explained that a "person cannot simply declare a new residence or domicile by purchasing or renting a home in one location. That person must also have an intent to live in the new residence permanently." *Huff*, slip op. at 5-6 (citing *Lesker*, 105 A.2d at 380; *Driscoll*, 847 A.2d at 50 (internal citation omitted)). As the Commonwealth Court noted in *Driscoll*, this Court also opined that "if the person is married and not separated from his spouse, he and his spouse must

both intend to live in the new residence permanently." *Id.*, slip op. at 6 (quoting *Driscoll*, 847 A.2d at 50 (alterations omitted)).

The Commonwealth Court next summarized two earlier Commonwealth Court decisions—*In re Hanssens*, 821 A.2d 1247 (Pa. Cmwlth. 2003), and *In re Walker* (Pa. Cmwlth., No. 164 MD 2018, filed Apr. 5, 2018) (Covey, J.) (unreported single-judge), both of which reference Section 704(d) of the Election Code. The Commonwealth Court explained that in *Hanssens*, a case which concerned whether a candidate was domiciled within the district in which he was running for office, it "stated that once the objectors demonstrated that the candidate's family resided outside of the district, the burden shifted to the candidate 'to show that he and his wife have actually separated and live apart and that he has acquired a new domicile.'" *Huff*, slip op. at 6 (quoting *Hanssens*, 821 A.2d at 1251). The candidate failed to establish definitively when his family could move into the address within the district, and the Commonwealth Court held that the candidate had "not yet fixed the [new address] as his family home," thereby affirming the common pleas court's order setting aside the nomination petition. *Id.*, slip op. at 7 (quoting *Hanssens*, 821 A.2d at 1252). Similarly, the Commonwealth Court explained that, in *Walker*, applying *Hanssens*, it "held that if the objectors proved that the candidate's family lived apart from the candidate, then the burden of proof shifted to the candidate to show that the candidate and his wife 'have actually separated and live apart and that he has acquired a new domicile.'" *Id.*, slip op. at 7 (quoting *Walker*, slip op. at 24 (emphasis omitted) (citing *Hanssens*)). There, the Commonwealth Court opined that, "[b]ecause it was undisputed that the candidate's wife (and son) did not live with the candidate, the [Election] Code 'prescribes that the place where a married man's family resides is his place of residence.'" *Id.* (quoting Walker, slip op. at 24-25 (citing 25 P.S. § 2814(d))).

Applying *Hanssens* and *Walker*, the Commonwealth Court concluded that Candidate was not eligible to appear on the ballot as a candidate for the Judicial Offices because his domicile is in Montgomery County. The Commonwealth Court reasoned:

> Because Objector demonstrated that Candidate's family resides in [Montgomery County], which is not in Philadelphia, the burden shifted to Candidate "to show that he and his wife have actually separated and live apart and that he has acquired a new domicile."
>
> Candidate, however, did not present any evidence that he separated from his wife. Instead, Candidate affirmatively testified that he was married to his wife. Candidate's wife, per the parties' stipulation, would have averred that their marriage was intact, they did not intend to divorce, and she lives in [Montgomery County].
>
> We acknowledge Candidate's testimony and evidence for the proposition that he lives in Philadelphia. But Candidate presented no testimony or evidence about when his *family* would move from [Montgomery County] to Philadelphia. To paraphrase *Hanssens*, Candidate's domicile is his *family's* home for an *indefinite* time. Because Candidate did not present any evidence that he was separated from his wife, . . . Candidate had to prove that his family intended to make Philadelphia their principal home indefinitely. Candidate, however, did not present any such evidence and thus could not meet his burden.

*Id.*, slip op. at 8 (internal citations omitted). The Commonwealth Court dismissed Candidate's argument that "the [Election] Code is antiquated because it does not permit a married, unseparated spouse to run for office in one district while the other spouse lives in a different district," advising that the remedy lies through the General Assembly. *Id.*, slip op. at 8-9. For those reasons, the Commonwealth Court granted Objector's petitions and ordered Candidate's name removed from the ballot for the Judicial Offices.

## II. ISSUES

On appeal to this Court,[3] Candidate presents the following questions for our review:

> 1. Did the Commonwealth Court err in determining that [Candidate], whose wife lives apart from him and outside of the First Judicial District, was not domiciled in the First Judicial District solely because he is married to an individual living outside the First Judicial District?
>
> 2. Was the Commonwealth Court's factual determination that [Candidate] was not domiciled in the First Judicial District supported by substantial evidence?[4]

(Candidate's Br. at 4.)

## III. PARTIES' ARGUMENTS

The thrust of Candidate's argument is that the Commonwealth Court improperly ignored extensive and unrebutted evidence that establishes that Candidate resides in, and intends to remain in, the First Judicial District and, instead, employed an "erroneous reading of the Election Code that would prohibit a candidate from running for judicial office

---

[3] "This Court may only reverse a Commonwealth Court's order concerning the validity of challenges to a nomination petition if the Commonwealth Court's findings of fact are not supported by substantial evidence in the record, there was an abuse of discretion, or there was an error of law." *Driscoll*, 847 A.2d at 49.

[4] Objector sets forth the following counter-statements of the questions involved:

> 1. Did the Commonwealth Court err in its legal conclusion that [Candidate] failed to prove his domicile had changed from Bala Cynwyd[, Montgomery County,] to Philadelphia, where the [Commonwealth] Court found he presented no argument on the question?
>
> 2. Did the Commonwealth Court rely on substantial evidence in the record in its factual determination that [Candidate's] wife was domiciled in Bala Cynwyd[, Montgomery County,] and that [Candidate] and his wife were in an intact marriage with no plans to separate?

(Objector's Br. at 4-5.) While Objector's first question hints at the possibility of waiver, we perceive none; Candidate's entire legal and factual argument focused on his belief that his domicile had changed. Thus, the phrasing of Objector's question is curious.

unless the candidate (1) is married and living under the same roof as the candidate's spouse; or (2) is single or divorced from the candidate's spouse and living apart." (Candidate's Br. at 15.) Candidate maintains that the Commonwealth Court's "opinion contravenes the language of the Election Code, which imposes no such requirement;" "runs afoul of more than a century of this Court's jurisprudence, which holds that the constitutional domicile inquiry at issue here is fact-intensive and governed by a host of considerations that the [Commonwealth] Court ignored;" and "leads to an absurd outcome that, despite [his] extensive ties to the First Judicial District, he in fact is eligible to run in Montgomery County—a judicial district where he obviously does not reside." (*Id.*) Additionally, it "wrongly assumes that, as a factual matter, a married couple cannot lead separate and distinguishable lives apart." (*Id.* at 28.)

More specifically, Candidate points out that the plain language of Section 704 of the Election Code does not apply to a candidate's eligibility to run for office. To the contrary, the section creates rules for "determining the residence of a person *desiring to register or vote*" and makes no reference to eligibility to run for office. (*Id.* at 21 (quoting 25 P.S. § 2814) (emphasis in brief)). Candidate argues that "[f]or more than a century, Pennsylvania courts have applied the factors identified in [*In re Nomination Petition of Shimkus*, 946 A.2d 139, 149 (Pa. Cmwlth. 2008) (Cohn Jubelirer, J.) (single-judge),]to determine eligibility of candidates—there [being] simply no need for Section 704 to address a candidate's eligibility for office." (*Id.*) Candidate maintains that, "[c]ritically, *Shimkus*, represents the distillation of principles articulated for as long as the Election

Code has existed," referencing *In re Stabile*, 36 A.2d 451 (Pa. 1944),[5] and *Bobrofskie*.[6]

(Candidate's Br. at 22-23.) In both *Stabile* and *Bobrofskie*, Candidate claims that our

[5] In *Stabile*, this Court considered an appeal from the Court of Common Pleas of Allegheny County, striking the name of the appellant from the *registry list of voters* in a ward of the City of Pittsburgh after having concluded that the appellant was a resident of Mount Lebanon Township and not the City of Pittsburgh. In reaching that conclusion, we considered the ties of Mr. and Mrs. Stabile to two properties they owned, those being their home in Mount Lebanon Township where their children resided throughout the year and a dwelling home in the City of Pittsburgh where the couple occasionally slept, dined, and entertained and where another family lived throughout the year. We then applied the traditional concept of domicile, citing this Court's decisions in *Commonwealth ex rel. Fortney v. Bobrofskie*, 196 A. 489 (Pa. 1938), *Fry's Election Case*, 71 Pa. 302, 309 (1872), and *Dorrance's Estate*,163 A. 303 (Pa. 1932), and also Section 704(a) of the Election Code. Section 704(a) provides: "In determining the residence of *a person desiring to register or vote*, the following rules shall be followed so far as they may be applicable: (a) That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning." 25 P.S. § 2814(a) (emphasis added). It is important to note that in *Stabile*, we addressed "the residence of a person *desiring to register or vote*," as opposed to a person *desiring to appear on the ballot as a candidate*. *See id.*

[6] In *Bobrofskie*, the Court considered an appeal of a quo warranto action from the Court of Common Pleas of Northumberland County, removing a member from the Board of Commissioners of Coal Township. We applied the traditional concept of domicile to determine the member's residency for purposes of holding office, observing:

> With a few scattered expressions to the contrary, the law is generally settled that, as regards the determination of domicile, a person's expression of desire may not supersede the effect of his conduct. "Apart from possible exceptions, a man cannot retain a domicil[e] in one place when he has moved to another, and intends to reside there for the rest of his life, by any wish, declaration or intent inconsistent with the dominant facts of where he actually lives and what he actually means to do." "Every person must have a domicile somewhere and a man cannot elect to make his home in one place for the general purposes of life, and in another place for the purposes of taxation." "A declaration [as to domicile] that is self-serving and not followed by acts in accordance with the declaration will not be regarded as conclusive, but will yield to the intent which the acts and conduct of the person clearly indicate."

*Bobrofskie*, 196 A. at 491 (internal citations omitted) (alteration in original) (quoting *Dorrance's Estate*, 163 A. at 308).

"Court engaged in a fact-intensive inquiry focused on the core requirements of domicile," later espoused in our decision in *In re Nomination Petition of Prendergast*, 673 A.2d 324 (Pa. 1996),—*i.e.*, "physical presence at the new residence plus intent to make that new residence the principal home." (Candidate's Br. at 24 (quoting *Prendergast*, 673 A.2d at 328).) Candidate criticizes the Commonwealth Court for its failure to apply the traditional concept of domicile, which requires physical presence and an intent to remain, and its reliance on a tortured and narrow reading of Section 704(d).

Of significance to Candidate is that, under the interpretation of the Commonwealth Court, "a candidate who satisfies *all* of the *Shimkus* factors (along with all of the remaining considerations enumerated in Section 704 [of the Election Code]) will nevertheless be barred from standing for office if he does not also satisfy Section 704(d)." (*Id.* at 25 (emphasis in original).) He contends that he "satisfies every *Shimkus* factor but one—he demonstrated his physical presence in-district, that he sleeps at the in-district property, that he keeps all or virtually all his belongings and personal effects in-district, and that he owns the in-district home—all of which is rendered a nullity by the [Commonwealth] Court's misapprehension of the law." (*Id.*) Candidate urges this Court to reject *Hanssens* and its progeny.[7]

---

[7] As to this argument, Candidate claims that the Commonwealth Court in both *Hanssens* and *Walker* ignored extensive factual records and focused rigidly on the fact that each candidate's wife lived outside the district. Candidate does not (and cannot) argue that the Commonwealth Court in *Hanssens* wrongly applied Section 704(d) of the Election Code, particularly given that the Commonwealth Court observed that the court of common pleas "did not make specific findings and conclusions as to whether [the candidate] and his wife were separated and living apart," and, essentially, the Commonwealth Court reviewed the court of common pleas' application of the traditional concept of domicile. *Hanssens*, 821 A.2d at 1252. Our analysis here turns on whether Section 704(d) is applicable and, if so, whether the Commonwealth Court applied it correctly. As such, whether the Commonwealth Court in *Hanssens* properly reviewed the court of common pleas' factually driven analysis of the traditional concept of domicile is not relevant to our analysis of the applicability of Section 704(d), and, therefore, we decline the invitation to (continued…)

Objector responds, first, by commenting on the facts of the case. Specifically, "Objector agrees with [Candidate's] statement of unrebutted facts when held for the assertion that claims were testified to at the evidentiary hearing or documents were presented which showed the information purported. [Objector] expressly rejects any and all inferences derived from, conclusions based on, or explanations offered to explain propositions not explicitly documented in the record." (Objector's Br. at 5.) Furthermore, "Objector notes that the Commonwealth Court did not make extensive findings of fact. To be sure, the Commonwealth Court made a finding of fact that [Candidate] presented evidence that he may *currently* live at the [Philadelphia address], but the Court made no finding of fact as to intent to make permanent such residency." (*Id.* (emphasis in original).)

Objector argues that the Commonwealth Court correctly applied Pennsylvania law in determining that Candidate did not establish that he is domiciled in the First Judicial District. He contends that Section 704(d) of the Election Code establishes an unequivocal presumption regarding the legal residence of a married person. Objector asserts that this mandatory language in Section 704(d) has been consistently applied by the Commonwealth Court in *Hanssens* and *Shimkus*. According to Objector, under *Hanssens*, "domicile for a married individual is conclusively presumed to be where [his or her] family resides unless the [c]andidate proves that the couple has actually separated." (*Id.* at 8.) Here, Candidate stipulated to the opposite. Instead, Objector maintains that "*Hanssens* correctly interprets the Election Code's clear statutory mandate" to apply "[i]ts bright-line rule," which "prevents opportunistic manipulation of residency, promotes electoral integrity, and maintains public confidence." (*Id.* at 9.) To hold otherwise "would

---

reject it. Regardless, we caution that *Hanssens'* precedential value should be viewed through this lens. As to *Walker*, an unpublished and, therefore, non-precedential decision of the Commonwealth Court, we need not overrule it. *See* Commonwealth Ct. I.O.P. § 414; 201 Pa. Code § 69.414.

open the door to strategic residency claims which would undermine the entire statutory residency framework[ ]affecting . . . elections." (*Id.*) Objector rejects any argument that *Shimkus* mandates a broad "totality of circumstances" balancing test, contending, instead, that *Shimkus* merely recognizes certain objective facts—such as cohabitation with family—as independently dispositive in domicile determinations. (*Id.* at 11.) Objector dismisses the characterization of *Shimkus* as identifying factors to be weighed for purposes of determining residence. Instead, Objector attempts to characterize *Shimkus* as using the factors "to determine whether the candidate actually 'inhabited' the claimed residence in the way Pennsylvania law requires for domicile." (Id. at 11-12.)

As to the facts of record, Objector asserts that Candidate's "change of address appears 'hoisted [as] a flag of convenience' rather than a true domicile." (*Id.* at 13 (quoting *Shimkus*, 946 A.2d at 148).) Objector acknowledges that the Commonwealth Court did not make a finding as to the permanence of Candidate's purported residence in Philadelphia and contends that there was no need for it to do so because Candidate's stay there was no different than a man on a long-term business trip.

As to the law, under either Section 704 of the Election Code or caselaw applying the traditional concept of domicile—such as this Court's decision in *In re Prendergast*—Objector claims that Candidate's family home where he and his wife previously lived together constitutes his residence so long as his wife remains there. Objector emphasizes that Section 704 uses the mandatory word "shall" to introduce its subsections, including subsection (d), with the directive that they "shall be followed so far as they may be applicable." (*Id.* at 17 (quoting 25 P.S. § 2814) (emphasis omitted).) Objector argues that Section 704(d) addresses spousal co-residence and "provides that such residence 'shall be considered and held to be' the married person's residence, 'except where the husband and wife have actually separated and live apart.'" (*Id.* (quoting

25 P.S. § 2814(d) (emphasis omitted).) Given the language of Section 704(d), Objector maintains that no invitation to balance may co-exist with its mandatory and conclusive treatment of marital co-residency. Should this Court disagree, Objector requests that the matter be remanded, as the Commonwealth Court did not make a factual finding as to whether Candidate established the necessary permanent intent sufficient to be domiciled in the First Judicial District.

## IV. DISCUSSION

### A. Case Law Regarding Residency and Domicile

As discussed above, the Pennsylvania Constitution requires that judges "reside within their respective districts" for at least "one year preceding their election . . . and during their continuance in office." Pa. Const. art. V, § 12. In the context of constitutional eligibility to run for office, this Court has long held that where a candidate resides is determined by the candidate's domicile.

In *Lesker*, a candidate filed with the Secretary of the Commonwealth a nomination petition for candidate for the Republican nomination for the office of assemblyman from the 9th Legislative District in Allegheny County. At that time, eligibility for that office was set forth in Article 2, Section 5 of the Pennsylvania Constitution of 1874, which provided, with a limited exception, that Representatives "shall have been citizens and *inhabitants* of the State for four years, and *inhabitants* of their respective districts one year next before their election . . . and shall *reside* in their respective districts during their terms of office." (Emphasis added.) The eligibility requirement under this former constitutional provision relied upon the concepts of "inhabitance" and "residence," and the Pennsylvania Constitution of 1874 was silent, as it is now, to the meaning of the term "reside," as well as the word "inhabitant."

Expounding on earlier constitutions of our Commonwealth and this Court's interpretation of similar provisions, we explained in *Lesker* that the concept of an elector's "residence" for purposes of our Constitution embodies a "home, fixed abode, domicil[e] of the elector, as distinguished from a place of temporary sojourning." *Lesker*, 105 A.2d at 378 (quoting *Fry's Election Case*, 71 Pa. at 309). Stated another way, "when the Constitution declares that the elector must be a resident of the state for one year, it refers beyond question, to the state as his home or domicil[e], and not as the place of a temporary sojourn." *Id.* at 379 (quoting *Fry's Election Case*, 71 Pa. at 307). On this point, we elaborated:

> It must be recognized that some confusion has arisen in the lay mind as to what constitutes legal residence because the word *residence* is often used synonymously with *domicile*. Not only are *residence* and *domicile* employed synonymously and interchangeably but often they are used overlappingly with one word including, with its meaning, a part of the meaning of the other. Thus, the person with a country home and a city home may with grammatic correctness say that he resides at both places. In point of law, however, only one of these places can be his permanent legal residence, that is, his domicile. Because he may (everything else being equal) arbitrarily decide which of these two places he will adopt as his domicile, it is said that residence is a matter of intent.

*Id.* (emphasis in original). We further explained that one must not "confuse[] intent with declaration of intent. In the law of domicile, intent is the *actual* state of facts, not what one declares them to be. One may even believe he is expressing intent and yet this expression would not be enough to establish the domicile or permanent abode which makes up legal residence in the law." *Id.* (emphasis in original).

This Court expanded our understanding of the concept of domicile for purposes of our current Pennsylvania Constitution in *Prendergast*, when we wrote:

> A domicile is the place at which an individual has fixed his family home and principal establishment for an indefinite period of time. *Dorrance's Estate* . . . . A domicile once acquired is presumed to continue until it is shown to have been changed and where a change is alleged, the burden of proving

it rests upon whoever makes the allegation. *Id.* A new domicile can be acquired only by physical presence at a new residence plus intent to make that new residence the principal home. *Id.* Intent is the actual state of facts, not what one declares them to be. An established domicile, however, can be retained without physical presence or residence until it be proven that a new domicile has been acquired.

*Prendergast*, 673 A.2d at 327-28. Of particular importance to the matter now before this Court is the manner by which we analyzed the question of domicile in *Prendergast*. We considered the specific factual circumstances of that case as they related to physical presence and intent. In *Prendergast*, a candidate sought to have her name placed on the ballot for the office of Representative in the Pennsylvania General Assembly. The candidate was born in Pennsylvania in 1963, resided here until 1990 when she moved to Virginia to attend law school. After graduating law school, she returned to Pennsylvania in January 1994. For purposes of determining whether the candidate remained a resident of Pennsylvania during her studies in Virginia and, therefore, satisfied the four-year state residency requirement immediately preceding the election, we relied upon this Court's guidance in *Lesker* and *Dorrance's Estate*.

In addition to the facts noted above, we considered that, while the candidate was in Virginia, she registered her vehicle there, registered to vote there, voted as a Virginia citizen in several elections, and qualified for the reduced tuition granted only to citizens of Virginia. We concluded that the candidate was a citizen of Virginia during the relevant time and, therefore, could not have been a citizen of Pennsylvania. In reaching this conclusion, we explained that we applied established law and noted that "Section 704(h) of the . . . Code . . . , 25 P.S. § 2814(h), provides that, '[i]f a person goes into another state and while there exercises the right of a citizen by voting, he shall be considered to have lost his residence in this State.'" *Id.* at 328. We further noted:

We are fully cognizant of the fact that [the candidate] was a citizen of Pennsylvania for the majority of her lifetime, that she sat only for the Pennsylvania bar exam, and that she intended to someday return to

> Pennsylvania. We find, however, that these factors are outweighed by those establishing a domicile in Virginia.

*Id.* at 328 n.1. Thus, in concluding that the candidate was ineligible to run for the office due to lack of residency, we gave primacy to the traditional concept of domicile while acknowledging the existence of Section 704 of the Election Code. Our analysis, however, was by no means driven by the statutory provision; rather, we properly focused on the constitutional test for residency, or domicile.

Less than a decade later, in *Driscoll*, this Court touched upon the applicability of Section 704(d) of the Election Code, albeit in dicta. In *Driscoll*, a candidate filed nomination petitions, seeking to be placed on the ballot as a candidate for the Democratic Party nomination for the office of Representative in the United States Congress for the then-15th Congressional District. An objector challenged his nomination petition on the basis that the candidate improperly stated in his nomination petition and affidavit that his residence was in Allentown, Pennsylvania, which was located within the 15th Congressional District, when he actually resided in Haverford, Pennsylvania, which was located outside of the 15th Congressional District. The objector advanced the residency challenge on the basis of the following facts—the candidate had previously resided with his wife and children in Haverford, his wife and children remained in Haverford, and his family would move to Allentown if he wins the election.

Two things are important to note: (1) a candidate for a Congressional District is not required by the United States Constitution to live within the Congressional District; and (2) the candidate's counsel stipulated to the fact that the candidate's legal residence is in Haverford according to the Election Code because that is where his spouse lives. *See Driscoll*, 847 A.2d at 47. Thus, the issue of the applicability of Section 704(d) was not before the Court in *Driscoll*. Ultimately, the Court concluded that "the Commonwealth Court did not abuse its discretion or commit an error of law in permitting [the c]andidate

to amend his nomination petitions and affidavit" because he was not required to live in the 15th Congressional District, he believed he had changed his residence, and he did not intend to deceive the electorate. *Driscoll*, 847 A.2d at 53. We acknowledge that the Court discussed Section 704(b) of the Election Code, but because our decision was not based on that section or its application, our discussion is no more than dicta.

In arriving at our conclusion in *Driscoll*, this Court discussed the Commonwealth Court's decisions in *In re Nomination Petition of Hacker*, 728 A.2d 1033 (Pa. Cmwlth. 1999), and *In re Nomination Petitions of McIntyre*, 778 A.2d 746 (Pa. Cmwlth. 2001) (Kelley, J.) (single-judge)[8]—two cases wherein the Commonwealth Court, applying Section 704(d) of the Election Code, concluded that the candidates had not successfully changed their domiciles because their wives, to whom they intended to remain married, remained in the residences they had left. In analyzing the candidate's argument in *Driscoll* that his filings should not be set aside because the incorrect address on the nomination petitions was due to "an innocent mistake of law and [he] did not intend to deceive the electorate," we addressed the interplay between Sections 976 and 977 of the Election Code[9] and set forth Section 704(b) of the Election Code, noting that it

---

[8] In *Hacker*, Section 704 of the Election Code was not relevant to the Commonwealth Court's analysis, which focused on whether the common pleas court erred in concluding that the defect—an incorrect residence identified on his filings—was a material defect necessitating that the nomination petition be stricken. As a result, *Hacker* does not provide legal support for the application of Section 704 of the Election Code in *Driscoll*. Similarly, in *McIntyre*, the Commonwealth Court did not address Section 704 of the Election Code; rather, it applied our decision in *Lesker* to determine residency. Moreover, as we earlier observed, decisions of the Commonwealth Court are not binding on this Court.

[9] 25 P.S. §§ 2936, 2937. Section 976 of the Election Code provides, in part, that "[n]o nomination petition . . . shall be permitted to be filed if . . . it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits." Section 977 of the Election Code provides, in part, that "[if] the court shall find that said nomination petition or paper is defective under the provisions of [S]ection 976, . (continued…)

provides for how a person's residence must be determined. *Driscoll*, 847 A.2d at 51. As for Section 704, we observed:

> [A]s made clear by [S]ection 704, while a person may have several residences, only one of those residences may qualify as that person's residence or domicile for purposes of the Election Code. *See* [*Prendergast*, 673 A.2d at 327-28]; [*Hanssens*.[10]] Moreover, a person cannot simply declare a new residence or domicile by purchasing or renting a home in one location. *See Prendergast*, 673 A.2d at 327-28; *Hanssens*, 821 A.2d at 1251-52. That person must also have an intent to live in the new residence permanently. *See Prendergast*, 673 A.2d at 327-28; *Hanssens*, 821 A.2d at 1251-52. *In addition, if the person is married and not separated from his spouse, he and his spouse must both intend to live in the new residence permanently. See Prendergast*, 673 A.2d at 327-28; *Hanssens*, 821 A.2d at 1251-52.

*Driscoll*, 847 A.2d at 49-50 (emphasis added).

The Court, in *Driscoll*, provided no analysis as to the applicability of Section 704 of the Election Code nor did the Court apply Section 704 to the facts before it. Moreover, in support of the statement that "spouse[s] must both intend to live in the new residence permanently," the Court cited the Commonwealth Court's decision in *Hanssens*, which is not binding on this Court, and our decision in *Prendergast*. As discussed above in detail, this Court in *Prendergast* did not address the applicability of Section 704; to the contrary, we applied the traditional concept of domicile while acknowledging the existence of

---

. . it shall be set aside." Section 977 also provides, in part, that where "objections relate to material errors or defects apparent on the face of the nomination petition or paper, the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms . . . as the said court may specify."

[10] Unfortunately, the subsequent history set forth in *Driscoll* for *Hanssens* is incorrect. This Court did not affirm the Commonwealth Court's decision in *Hanssens*; to the contrary, we denied allocatur review. *In re Nomination Petition of Hanssens* (Pa., No. 198 EAL 2003, order filed May 8, 2003); *see also* Pa. R.A.P. 1123 (pertaining to denial of petition for allowance of appeal and reconsideration). Thus, while the Commonwealth Court's decision stood, we did not opine on it. As discussed in detail above, the Commonwealth Court's application of Section 704 in *Hanssens* is muddled with the traditional concept of domicile.

Section 704. The Court then continued, in *Driscoll*, by discussing the requirements of sworn affidavits, with no analysis of the applicability of Section 704. Thus, to the extent that *Driscoll* is cited for the proposition that Section 704(d) would require Candidate's filings, here, to be set aside, it is dicta.[11]

Quite reasonably, the Commonwealth Court has viewed this Court's discussion of Section 704 of the Election Code in *Driscoll* as a ruling that Section 704 of the Election Code governs for purposes of determining a candidate's constitutional eligibility to run for office. *See Shimkus*, 946 A.2d at 149. In *Shimkus*, the candidate filed nomination petitions for the Democratic nomination for Representative in the General Assembly for the 113th Legislative District, and the objector sought to have the petitions set aside on the basis that the candidate provided a false address to deflect negative attention because, in part, he, a pastor, was living with his fiancée to whom he was not married. In considering whether the candidate resided at the residence listed on his nomination petitions and affidavit or with his fiancée for purposes of the Election Code, the Commonwealth Court explained:

---

[11] "Dicta" is generally defined as statements "of opinion or belief considered authoritative because of the dignity of the person making it." BLACK'S LAW DICTIONARY 570 (12 ed. 2024). More precisely, this Court has explained that "dicta" is "an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision." *Cole v. Pa. Dep't of Env't Prot.*, 329 A.3d 1228, 1250 n.101 (Pa. 2025) (quoting *Castellani v. Scranton Times, L.P.*, 124 A.3d 1229, 1243 n.11 (Pa. 2015)). Dicta, thus, has no precedential value. *Id.* While dicta "may be respected" it "ought not to control the judgment in a subsequent suit, when the very point is presented for decision." *Commonwealth v. Romero*, 183 A.3d 364, 400 n.18 (Pa. 2018) (quoting *Williams v. U.S.*, 289 U.S. 553, 568 (1933). Indeed, "dicta often present risks of unforeseen complications and unintended consequences, which is why reliance upon them to resolve those same complications can be difficult to justify, if not ill-advised. *Id.* Furthermore, "mere repetition of dicta in later decisions, where it does not control the disposition of a litigated issue, does not transform that dicta into controlling law." *Id.*

Factors that have influenced this Court's determination of whether a listed address was indeed the candidate's residence include: (1) the candidate's presence or absence at the address, [*Hacker*, 728 A.2d at 1033]; (2) where members of the candidate's household reside, [*McIntyre*, 778 A.2d at 753]; *Hacker*, 728 A.2d at 1033; (3) whether the candidate pays rent on or has a lease for the property he claims as his residence, *McIntyre*, 778 A.2d at 752; (4) where the candidate sleeps, *id.*; (5) what belongings and personal effects the candidate keeps at the address, *id.*; and (6) whether the candidate owns another home to which he appears more permanently attached, *id.*; *Hacker*, 728 A.2d at 1033.

More recently, in [*Driscoll*], the Supreme Court applied the definition of residence found in Section 704 of the Election Code . . . . Section 704 states that:

> [i]n determining the residence of a person desiring to register or vote, the following rules shall be followed so far as they may be applicable:

> (a) That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning.

25 P.S. § 2814. *Although Section 704 does not, by its express terms, apply to a candidate for office, the courts have so applied this definition. See Driscoll, . . . 847 A.2d at 51; Prendergast, . . . , 673 A.2d at 328.*

*Shimkus*, 946 A.2d at 148-49 (emphasis added).

Two things stand out in the Commonwealth Court's analysis in *Shimkus*. First, the Commonwealth Court cited as binding precedent this Court's dicta in *Driscoll*. Second, as a result of its reliance on the dicta contained in *Driscoll* and its overly broad reading of *Prendergast*, the Commonwealth Court misstated that courts have applied Section 704 of the Election Code, or at least its definitions, to candidates for office despite the clear text of the statutory provisions that limits its application "person[s] desiring to register or vote." See 25 P.S. § 2814.

### B. Candidate's Residency and Domicile

With that understanding of the relevant case law, we now turn to the crucial question of whether, for purposes of eligibility to run for elective office, Candidate, a married man, may obtain a domicile different from his spouse while in an intact marriage.

Article V, Section 12 of the Pennsylvania Constitution provides, in part, that "judges and justices of the peace, for a period of one year preceding their election or appointment and during their continuance in office, shall *reside* within their respective districts." (Emphasis added.) As noted above, Section 977 of the Election Code requires a reviewing court to set aside a nomination petition "[i]f the court shall find that said nomination petition or paper is defective under the provisions of [S]ection 976 [of the Election Code]." 25 P.S. § 2937. Pursuant to Section 976, "[n]o nomination petition, nomination paper or nomination certificate shall be permitted to be filed if . . . it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits." 25 P.S. § 2936. "Each candidate . . . shall file with his nomination petition his affidavit stating--(a) his residence . . . ." Section 910 of the Election Code, 25 P.S. § 2870.

When reviewing statutory provisions of the Election Code and ruling on challenges to nomination petitions, we are often confronted with two statutory construction principles. One principle requires us to consider the longstanding and overriding policy in our Commonwealth to protect the elective franchise. *See In re Luzerne Cnty. Return Bd., Appeal of Weiskerger*, 290 A.2d 108, 109 (Pa. 1972). In promoting that policy, this Court has made clear that the provisions of the "Election Code must be liberally construed so as not to deprive an individual of his right to run for office or the voters of their right to elect a candidate of their choice." *In re Petition of Ross*, 190 A.2d 719, 720 (Pa. 1963). The other guiding principle requires us to "strictly enforce" the provisions of the Election Code. *In re Nomination Papers of James*, 944 A.2d 69, 72 (Pa. 2008). This is because "the provisions of the [Election Code] relating to the form of nominat[ion] petitions and the accompanying affidavits are not mere technicalities but are necessary measures to prevent fraud and to preserve the integrity of the election process." *In re Nomination Petition of Cianfrani*, 359 A.2d 383, 384 (Pa. 1976). Moreover, "nomination petitions are

presumed to be valid[,] and an objector has the burden of proving that a nomination petition is invalid." *Driscoll*, 847 A.2d at 49.

As discussed above, the text of the Pennsylvania Constitution bases a candidate's eligibility to run for office on the candidate's residency, and nomination petitions and a candidate's affidavit list the candidate's residence. Residency, in this context, means domicile. *See In re Lesker*, 105 A.2d at 380. Here, however, the Commonwealth Court eschewed the traditional concept of domicile—"physical presence at the new residence plus intent to make that new residence the principal home," *Prendergast*, 673 A.2d at 328—in favor of a bright-line rule derived from the application of Section 704 of the Election Code's residency rules.

Section 704 provides, in its entirety:

§ 2814. Rules for determining residence

In determining the *residence of a person desiring to register or vote*, the following rules shall be followed so far as they may be applicable:

(a) That place shall be considered the residence of a person in which his habitation is fixed, and to which, whenever he is absent, he has the intention of returning.

(b) A person shall not be considered to have lost his residence who leaves his home and goes into another state or another election district of this State for temporary purposes only, with the intention of returning.

(c) A person shall not be considered to have gained a residence in any election district of this State into which he comes for temporary purposes only, without the intention of making such election district his permanent place of abode.

(d) *The place where the family of a married man or woman resides shall be considered and held to be his or her place of residence, except where the husband and wife have actually separated and live apart, in which case the place where he or she has resided for two months or more shall be considered and held to be his or her place of residence.*

(e) If a person removes to another state with the intention of making such state his permanent residence, he shall be considered to have lost his residence in this State.

(f) If a person removes to another state with the intention of remaining there an indefinite time and making such state his place of residence, he shall be considered to have lost his residence in this State, notwithstanding he may entertain an intention to return at some indefinite future period.

(g) If a person removes to the District of Columbia or other Federal territory or foreign country to engage in the government service, he shall not be considered to have lost his residence in this State during the period of such service, and the place where the person resided at the time of his removal shall be considered and held to be his place of residence.

(h) If a person goes into another state and while there exercises the right of a citizen by voting, he shall be considered to have lost his residence in this State.

25 P.S. § 2814 (emphasis added).

Putting aside for a moment the question of whether Section 704 of the Election Code applies outside of the context of determining where one may register to vote, we observe that the section closely aligns with the traditional concept of domicile embraced by this Court. In *Prendergast*, we described domicile, as follows:

A domicile is the place at which an individual has fixed his family home and principal establishment for an indefinite period of time. *Dorrance's Estate* . . . . A domicile once acquired is presumed to continue until it is shown to have been changed and where a change is alleged, the burden of proving it rests upon whoever makes the allegation. *Id.* A new domicile can be acquired only by physical presence at a new residence plus intent to make that new residence the principal home. *Id.* Intent is the actual state of facts, not what one declares them to be. An established domicile, however, can be retained without physical presence or residence until it be proven that a new domicile has been acquired.

*Prendergast*, 673 A.2d at 327-28. Comparing the traditional concept of domicile and Section 704, it is apparent that each subparagraph of Section 704 provides a factual scenario and assessment of residency based thereon entirely consistent with the traditional concept of domicile, as they require physical presence and permanency. The only exception is paragraph (d), which moors a married person's domicile to that of his

family, or spouse.  That tether can only be severed, under the Election Code, where the "husband and wife" separate and live apart.

Section 704 of the Election Code has not been amended since its enactment in 1937.  Paragraph (d) of that section reflects the traditional notions of marriage and family from that era.  This case invites us to grapple with the application of this statutory provision in a modern context.  We, however, decline the invitation, because we conclude that Section 704 does not, by its express terms, apply to determining where a candidate resides for purposes of assessing his or her constitutional eligibility to run for office under Article V, Section 12 of the Pennsylvania Constitution.  Section 704 quite clearly provides that it applies only when "determining the residence of *a person desiring to register or vote.*"  25 P.S. § 2814 (emphasis added).  Strict enforcement of the clear and unambiguous terms of the statute requires that we abstain from applying it here, where Candidate's eligibility to run for office, not his voter registration, is challenged.  Even if we were to apply the liberal construction principle here, we would reach the same conclusion.  We will not apply a provision of the Election Code that so clearly does not apply by its express terms to deny a candidate of his right to run for elective office and the electors the opportunity to cast their ballot for the candidate of their choice.  The inevitable conclusion, then, is that Section 704(d) cannot be used as a bright-line rule to justify removing a candidate from the ballot for failure to satisfy Article V, Section 12's residency requirement.

While Section 704(d) of the Election Code is not a *per se* rule in this context, and notwithstanding this Court's dicta in *Driscoll*, this Court, as evidenced by the development of the law delineated above, has throughout the last century consistently equated residency for purposes of constitutional eligibility to run for office with the traditional concept of domicile and has applied a totality of the circumstances test that examines a

variety of factors to discern a candidate's physical presence and intent. *See Lesker; Prendergast*. We have not adopted nor created a *per se* rule applicable to married candidates; moreover, neither has the General Assembly, as revealed in our analysis of Section 704(d). This is not to say that courts are prohibited from considering, as part of the totality of the circumstances, the rule set forth in Section 704(d), for courts most assuredly may consider marital status and a couple's living arrangements when determining a candidate's domicile for residency purposes, but those marital circumstances cannot be the only factor considered nor can the circumstances of a married couple living separate and apart, alone, function as a bar to constitutional eligibility.

Additionally, the totality of the circumstances test must include an assessment of the candidate's credibility as to his physical circumstances and his intent to remain. As to the latter, "intent" is a foundation of the domicile inquiry. That intent, as voiced by the candidate, however, is not dispositive or controlling. Rather, a candidate's intent must further be tested against the totality of other discernable facts from the record to support the candidate's claim of residency, or domicile. *See Driscoll*, 847 A.2d at 50. As we explained in *Lesker*, a court must not "confuse[] intent with [a] declaration of intent. In the law of domicile, intent is the actual state of facts, not what one declares them to be." *Lesker*, 105 A.2d at 379 (emphasis omitted). An expression of intent, alone, therefore, is insufficient. The factors in support of and against domicile must be considered—*e.g.*, a candidate's presence or absence at an address, where the members of his household reside, whether he rents or leases the property, where he sleeps, what belongings and personal effects he keeps at the address, whether he owns another home to which he is more permanently attached, etc.—to determine whether they evidence the required

physical presence and intent to remain. *See Prendergast*; *Lesker*; *Stabile*; *Shimkus*. As we opined in *Lesker*:

> To accomplish a change of domicile there must be not only the *animus* to change but the *factum* as well. There must be an actual transfer of bodily presence from one place to the other. The *animus* and the *factum* do not need to be simultaneous, but until they coincide the change of domicile is not effected. . . .
>
> One almost conclusive criterion of domicile is the *animus manendi*. There must be the intention to *remain*.

*Lesker*, 105 A.2d at 380 (emphasis in original). Additionally, it must be noted that "intent" is not the same as "motive." A candidate may be motivated by any number of reasons to make a certain location his domicile, including the desire to run for public office; the relevant inquiry, however, focuses on the candidate's actual domicile, meaning the candidate's physical presence and intent to remain.[12]

Here, the Commonwealth Court applied Section 704(d) of the Election Code as a bar to residency, focusing exclusively on the status of Candidate's marriage and whether the couple lived together or apart. *Huff*, slip op at 8 (stating "Candidate, however, did not present any evidence that he separated from his wife;" "Candidate presented no testimony or evidence about when his *family* would move . . . to Philadelphia" (emphasis in original); "Because Candidate did not present any evidence that he was separated from his wife, . . . Candidate had to prove that his family intended to make Philadelphia their principal home indefinitely."). The Commonwealth Court did not assess Candidate's credibility or weigh the evidence of record to make a determination, based on the totality of the circumstances, of whether Candidate has satisfied the residency eligibility

---

[12] A distinction exists, however, between a motive to make a location one's domicile for purposes of a residency requirement in the Election Code and a motive to deceive as to one's domicile. The former is acceptable, or at least not disqualifying; the latter is not. *See Hacker*; *McIntyre*.

requirement set forth in Article V, Section 12 of the Pennsylvania Constitution. We, therefore, must vacate the Commonwealth Court's determination and remand for expedited reconsideration in light of this opinion.

## V. CONCLUSION

For these reasons, we vacate the order of the Commonwealth Court and remand the matter as specified in the accompanying order.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht, Mundy and McCaffery join the opinion.